[Western Union Telegraph Co. v. Way.]

# Western Union Telegraph Co. *v.* Way.

*Action for Damages against Telegraph Company.*

1. *Amendment of complaint; statute of limitations as to new matter.* The statute of limitations may be pleaded to an amendment which introduces a new cause of action, but not to an amendment which merely varies the allegations descriptive of matters averred by way of inducement; as, where the action seeks to recover damages for the non-delivery of a message by a telegraph company, the averments as to the telegram in response to which the message was sent, its substance, meaning, or legal effect, may be varied by amendment affecting only the measure of recovery.

2. *Proof of telegram.*—A telegram sent to plaintiff by his foreign correspondent, whose name was signed in cipher, being delivered to plaintiff by the defendant company, proof of this fact is *prima facie* sufficient, as against the defendant, to identify the sender as the person to whom the message in reply was directed; and the message delivered to the foreign office for transmission being beyond the jurisdiction of the court, while that received by plaintiff has been lost or destroyed, the contents may be proved by secondary evidence, as in the case of other written instruments, no matter which may be regarded as the original.

3. *Admissions or declarations of agent, as evidence against principal.* The admissions or declarations of an agent are not competent evidence against his principal, unless made within the scope of his authority, and while in the performance of his duty, or so near in point of time to the main fact as to form a part of the *res gestæ*, serving to explain or elucidate the nature and character of the transaction.

4. *Conditions limiting liability of telegraph company.*—A telegraph company, not being bound to receive for transmission messages directed to places beyond its own lines, nor to secure their transmission, may, in undertaking that service, fix terms, conditions and regulations, not contrary to law or public policy, limiting its liability; but it can not, in any case, whether the message be directed to a place within or beyond its own lines, stipulate for exemption from liability for the negligence of its own agents, or the exercise by them of due care and negligence.

5. *Same.*—Stipulations limiting the liability of the telegraph company for mistakes or delay in the transmission or delivery of unrepeated messages, or for their non-delivery to a connecting company, and for errors in cipher or obscure messages, have no application where the message is never forwarded at all from the office at which it was received, for this would be to exempt it from liability for the negligence of its own servants.

6. *Same; limitation of time for presentment of claim.*—A stipulation requiring a claim for damages to be presented within a specified time "after the sending of the message," is in the nature of a condition subsequent, which will not be extended beyond its terms, as expressed or clearly implied; and the limitation does not begin to run until the message has been sent from the receiving office.

7. *Measure of damages for breach of executory contract.*—The recoverable damages for a breach of an executory contract, in all cases, are such as would naturally, generally and proximately result from the

[Western Union Telegraph Co. v. Way.]

breach, "according to the usual course of things," whether actually contemplated by the parties or not, since the law conclusively presumes they were contemplated; but special circumstances, which take the contract out of the usual course of things, if unknown and uncommunicated, do not form an element of the contract, nor of the recoverable damages for a breach. This is the rule established by *Hadley v. Baxendale*, 9 Exch. 341, as explained and declared in *Daughtery v. W. U. Telegraph Co.*, 75 Ala. 168; and the court adheres to it.

8. *Damages against telegraph company; cipher message.*—The damages recoverable against a telegraph company, for the failure to send a cipher message, is the same as if the message was expressed in ordinary language, and it is not necessary that its meaning should be explained to the receiving agent of the company. (SOMERVILLE, J. *dissenting*.)

9. *Same; message as entirety.*—Where plaintiff's telegram was sent in reply to an offer by his foreign correspondent to buy and sell cotton on different days in the future, and was an acceptance of the offer, the damages for a failure to send it are to be estimated on an acceptance of the offer as an entire contract; and if profits would have accrued to plaintiff from one part of the contract, but losses would have resulted from the other, he can only recover the difference in his favor.

10. *Same; losses on future contracts which might have been prevented.* It was plaintiff's duty, on learning that his telegram had not been sent, to take steps at once, within a reasonable time, to prevent further loss on his future contracts, buying or selling according to his condition with respect to the market; and he can not hold the telegraph company responsible for damages which might have been prevented by his timely action in this particular.

11. *Same; special circumstances not communicated.*—Plaintiff's losses on contracts carried over from the previous year, and his purchase of one thousand bales of cotton a few days before he received the offer of his foreign correspondent, are special circumstances, which, not having been communicated to the agent of the telegraph company, can not be considered in estimating his damages for the failure to forward his message accepting the offer.

12. *Evidence of plaintiff's financial condition.*—The embarrassed financial condition of the plaintiff at the time of sending his telegram, accepting an offer to buy and sell cotton for future delivery, has no legitimate connection with the liability of the telegraph company for failing to forward the message, nor with the measure of damages he is entitled to recover; and evidence of it is not admissible against him.

13. *Construction of letters and telegrams; charge as to.*—It is the duty of the court to construe all writings, and to instruct the jury as to their meaning and legal effect; and where the negotiations between the parties have been carried on by letter and telegrams, though the latter are in cipher, the court should only submit to the jury the credibility of the oral testimony as to the meaning of the cipher words.

14. *Exemplary damages.*—Exemplary damages can not be recovered against a telegraph company, for the failure to send a message in cipher, the meaning of which was not communicated to the receiving agent, when the evidence does not show that the negligence was wanton, willful, or so gross as to raise the presumption of a conscious indifference to consequences.

15. *Proof of value of cotton, at home or foreign market, as element of damages.*—Where the action is for damages against a telegraph company, on account of its failure to forward a telegram to plaintiff's correspondent in Bremen, Germany, accepting his offer to buy and sell cotton for future delivery in New York, evidence as to the price of cotton on those days in Liverpool, England, is irrelevant and inadmissible, in the absence of all proof as to a connection or mutual dependence of the two markets on each other,

16. *Contracts for future delivery of cotton.*—A contract for the sale or purchase of cotton on a future day, the delivery to be in Germany, can not be declared a gambling contract by our courts, in the absence of all proof as to the law of Germany.

17. *Contracts made on Sunday.*—A contract consummated by telegram, sent from Montgomery, Alabama, late Saturday evening, to a person residing in Bremen, Germany, can not be declared invalid under our statute (Code, § 2138), because the telegram must be delivered on Sunday to make it binding on the person to whom it is directed; there being no evidence as to the law of Germany governing such contracts.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Charlton H. Way, against the appellant, a foreign corporation organized under the laws of New York, and doing business in Alabama through its agents, to recover damages for the defendant's failure to transmit a telegraphic message sent by plaintiff on the 14th June, 1884, through the defendant's office at Montgomery, Alabama, directed to Johannes Roth, at Bremen, Germany; and was commenced on the 7th January, 1885. The message delivered to the defendant for transmission was in these words: "*Victoria, Bremen: Lurching prepotent;*" which, as interpreted by the plaintiff, testifying on the trial as a witness for himself, meant, "*Johannes Roth, Bremen: Accept the offer, how much;*" and he further testified that this message was a reply to a telegram, or cablegram, which he had received from Roth on the same day, in cipher, as follows: "*Slowness, absentees, expenses, provided, pleasure, harbinger, November, New York, ponderable;*" which meant, when translated: "*We offer firm for 1,000 bales average middling, nothing under low middling, at 6⅛d. cost, insurance and freight, and 6 per cent.; prompt shipment by steamer; price 1–32d. more, September delivery; provided give us authority to buy, at yesterday's closing quotations, November, New York, for your account.*

Plaintiff's message was written on a printed blank form furnished by the defendant, which contained the following stipulations on the face and back: "All messages destined for points beyond the United States, *via* the Atlantic cables to Cuba, which are received by this company for transmission, will be so received, and sent forward over its lines to the terminus thereof, and there delivered to the next connecting telegraph company, only on the terms and conditions printed on the back hereof." "Send the following message, subject to the terms and conditions printed on the back hereof, which are agreed to." "*Terms and conditions:* To guard against

[Western Union Telegraph Co. v. Way.]

mistakes on the lines of this company, the sender of every message should order it repeated; that is, telegraphed back from the terminus of said lines to the originating office. For such repeating the sender will be charged, in addition, one half the usual tolls of this company, on that portion of its lines over which such message passes. This company will not assume any responsibility in respect to any message beyond the terminus of its own lines; and it is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in transmission or delivery, or for non-delivery to the next connecting telegraph company, of any unrepeated message, beyond the amount of that portion of the charge which may or shall accrue to this company out of the amount received from the sender, for this and the other companies by whose lines such message may pass to reach its destination; and that this company shall not be liable for mistakes in the transmission or delivery, or for non-delivery to the next connecting telegraph company, of any repeated message, beyond fifty times the extra sum received by this company from the sender, for repeating such message over its own lines; and that this company shall not be liable, in any case, for delays arising from interruption in the working of its lines, nor for errors in cipher or obscure messages; and this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company necessary to reach its destination. This company is not to be liable for damages in any case, where the claim is not presented in writing within sixty days after the sending of the message."

The original complaint contains a single count, but two other counts were added by amendment, to each of which demurrers were interposed but overruled. The defendant also objected to the amendment, on the ground that it presented a new cause of action, but the objection was overruled. The defendant pleaded the general issue, and twenty-five special pleas, to each of which demurrers were sustained. Of these special pleas, some set up the statute of limitations; some, the plaintiffs' failure to present his claim within sixty days, as required by the printed conditions on the message, and other conditions therein specified; and several of them averred that the message and its acceptance constituted a gambling contract. The opinion states the substance of

these several pleas.    Issue was joined on the plea of not guilty.

The plaintiff was examined as a witness for himself, and testified that, on the 14th June, 1884, he delivered to the defendant's agent, at the office in Montgomery, the message above set out, directed to Roth at Bremen, the meaning of which he explained; that this message was a reply to a cablegram which he had that day received from Roth, whose cipher name was *Victoria;* and he was allowed to testify, against the objection of the defendant, as to the contents and meaning of the latter message, after stating its loss and his search for it.    The defendant reserved an exception to the admission of this secondary evidence.    The plaintiff testified, also, that on the 16th June, two days after the delivery of his message at the defendant's office, in a conversation with E. Winter, the manager of the office at Montgomery, the latter remarked, *"I am afraid Bremen has gone back on you;"* that he first learned about the 1st July that his telegram had never been forwarded from Montgomery, and thereupon addressed a letter to said Winter, asking information as to the circumstances connected with the failure to send it, and received a reply, in which Winter expressed his regret at the failure, and said that he could not give any explanation in the absence of the clerk who had received the message.    The letters were produced, dated July 10th and 12th respectively, and were admitted as evidence by the court, against the objection and exception of the defendant.    Exceptions were also reserved by the defendant to other rulings on evidence, which will be understood from the opinion.

The court gave the following (with other) charges to the jury, on request of the plaintiff:    (1.) That if the defendant received plaintiff's telegram for transmission to Roth at Bremen, and failed to forward it from Montgomery, and plaintiff thereby sustained "actual damage to the extent of ten dollars per bale on one thousand bales of cotton, then their verdict must be for the plaintiff, for that amount, with interest."    (2.) That if, on the facts stated as above, plaintiff sustained "actual damage to the extent of ten dollars per bale on thirty-five hundred bales of cotton," then their verdict must be for him, for that amount, with interest.    (3.) That if, on the facts stated as above, plaintiff sustained actual damage from the defendant's failure to forward his telegram, "then the jury should allow him all such damage as he has sustained

by such failure, with interest." (4.) That in determining whether plaintiff's telegram "involved a transaction of one thousand bales of cotton, or of thirty-five hundred bales, or as to what transaction it did involve, the jury will look at all the surrounding circumstances in evidence before them connected with said telegram, and which preceded it and induced plaintiff to send it." (5.) That if the telegram, "although in cipher, related to important business transactions, and defendant had notice, from all the surrounding circumstances, that it related to important business transactions, and was guilty of gross negligence in failing to forward said telegram out of its office at all, then defendant was guilty of gross negligence." (6.) That in determining whether plaintiff ought to have sold his cotton before the first day of November, "the jury should consider and look at all the facts and circumstances surrounding the transaction, and his condition at the time, as shown by the evidence, and that cotton was fluctuating in value, if the evidence shows the fact, and was a commodity liable to fluctuate in value."

The defendant excepted to each of these charges as given, and requested numerous charges in writing, among which were the following: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "If the jury believe the evidence, they must find for the defendant, except as to the amount paid by plaintiff as the charge for sending his message, with interest thereon." (3.) "If the jury believe that the plaintiff's telegram was in cipher, and its meaning was obscure and unknown to defendant, and could not be ascertained from reading it, and defendant was not informed of its meaning or importance; then, upon this state of facts, if the jury find them to exist, they can not find a verdict against the defendant greater than the price paid for the message, with interest thereon." (4.) "It was plaintiff's duty, if he intended to hold defendant responsible for the non-delivery of his message, to notify defendant as soon as he reasonably could, after learning that his telegram had not been sent, as to the nature of Roth's offer to him, and give the defendant the right to take the contracts for future delivery, if any, which plaintiff had purchased, or then held, for the purpose of complying with his supposed contract with Roth, upon defendant's paying him the difference in value in the market price of cotton, with other reasonable expenses in connection with said contracts, and assuming the further execution of plaintiff's said contracts; "and if he failed to do

this, and held on to such cotton contracts, and loss thereby resulted to him, the defendant is not liable for any damages so occasioned." (5.) The printed conditions annexed to the telegram, limiting the defendant's liability for unrepeated messages, "are reasonable;" and in the absence of any fraud or misrepresentation practiced on the plaintiff, his act in writing out the message, and depositing it with defendant for transmission, "is an assent on his part to such conditions, and estops him from claiming more than the price paid for the message, with interest." (6.) If plaintiff had contracts for delivery in the future of 2,500 bales of cotton, resulting from his operations during 1883–4, and his ownership of such contracts commenced prior to Roth's offer in his cablegram of June 14th, and also entered into a contract with Clisby for the delivery of one thousand bales more; "then plaintiff had no right to hold on to all of said contracts, until the delivery of the cotton, in order to be prepared to hold Roth to his offer." (7.) If the jury believe that plaintiff's cablegram from Roth, "in view of what had passed between them, as testified to by plaintiff, was a proposition by Roth to buy from thirty-five hundred to five thousand bales of cotton; on this state of facts, the seasonable receipt by Roth of plaintiff's telegram would not have bound plaintiff to sell any specific number of bales, nor Roth to purchase the same, and would not have constituted a binding contract between them." (8) The jury can not, under the evidence, give vindictive or exemplary damages. (9.) If Roth's cablegram was sent from Bremen on Saturday, "and could not ripen into a contract unless the acceptance thereof was delivered to him by twelve o'clock on the next day; then, even if plaintiff's answer had reached Roth within that time, it would not have made a binding contract between them." (10.) Roth's cablegram to plaintiff, and plaintiff's reply thereto, "as matter of law, relate to the purchase and sale of one thousand bales of cotton, and no more." The court refused each of these charges as asked, and the defendant excepted to their refusal.

The allowance of the amendment to the complaint, the several rulings on the pleadings and evidence, the charges given, and the refusal of the several charges asked, are now assigned as error,—making in all sixty-three assignments.

GAYLORD B. CLARK, and JONES & FALKNER, for appellant.
1.   As to the measure of damages for a breach of contract,

express or implied, the rule laid down in *Hadley v. Baxendale*, 9 Excheq. 341, is, that the damages should be "such as reasonably may be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." This rule was not the creation of Baron Alderson, who thus formulated it in his opinion in that case, but had long been established in the courts of common law, as well as in the civil law.—Code Napoleon, art. 1149-51; French Civil Code, translated by Halstead & Vorhies, 1841, p. 314; Civil Code of Louisiana, ed. 1867, § 1928; Pothier on Obligations, mar. 159. It has been since followed, with only two exceptions, by the courts in England and in this country.—*Horne v. Midland Railroad Co.*, 8th L. R. 131; *Riley v. Horne*, 5 Bing. 217. This rule is specially applicable in cases against telegraph companies, and has always been applied in such cases, except by the Supreme Court of Georgia, and by this court in *Daughtery's case* (75 Ala. 168), which has since been followed by the Supreme Court of Florida. So far as the rule is impugned or doubted in *Daughtery's case*, the appellant asks a re-consideration of the question.

2. A common carrier may limit his liability by reasonable rules and regulations.—*Steele & Burgess v. Townsend*, 37 Ala. 247; *M. & O. Railroad Co. v. Hopkins*, 41 Ala. 486; *Railroad Co. v. Henlein*, 52 Ala. 606; *Grey v. Mobile Trade Co.*, 55 Ala. 387. A telegraph company is not liable to the strict rule which governs common carriers, and a mere error in the transmission of a message is not *prima facie* evidence of negligence.—45 Barb. 274; 48 N. Y. 132; 27 Iowa, 492; 18 Md. 341; 45 N. Y. 744, 751; 13 Allen, Mass. 226; 63 Texas, 668; 57 Texas, 283; 14 Fed. Rep. 710; 17 *Ib.* 717; 19 So. Car. 71; 11 Nebr. 87; 13 Amer. & Eng. Corp. Cases, 585; Gray's Tel. Com., § 19; 107 U. S. 102.

3. In this case, the message was sent on a printed blank, subject to the printed "terms and conditions" there specified, which were intended to guard against mistakes; and the sender was there notified to guard against mistakes, by having the message repeated, at an increased charge. For any unrepeated message, by these conditions, the liability of the telegraph company is limited to the price paid for sending the message, while fifty times that sum is the measure of liability for a repeated message. These are valid conditions, and have been sustained in the following cases: 48 N. Y. 132; 51 N. Y. 166; 27 Iowa, 432; 1 Metc. Ky. 164; 37 Mo.

432; 13 Mass. 226; 15 Mich. 525; 78 Penn. St. 238; 112 Mass. 171; 113 Mass. 299; 11 Nebr. 87; 57 Texas, 283; 89 N. C. 334; 45 N. Y. 774; 65 N. Y. 163; 66 Cal. 579; Allen's Tel.. Cases, 38, 306, 663; 17 C. B. Rep. 3.

4. Another one of the printed conditions declares, that the telegraph company shall not be liable "for errors in cipher or obscure messages." The nature of the telegraph business makes this a reasonable, and even necessary regulation and limitation of liability. Very few persons write with such distinctness, that every word or letter, without the aid of the context, is plain and unmistakable; and cipher messages convey no idea to the telegraph operator, being only an aggregation of words or letters importing no meaning to the eye or the mind, and purposely made unintelligible to him; while the receiving operator at the terminus of the line, taking the message by sound merely, is more likely to be mistaken by the symbols which strike his ear, and has no opportunity to verify their correctness. On grounds of public policy, too, such a limitation of liability is reasonable, because necessary to guard against fraud on the part of the sender. If the sender desires to curtail the expense of telegraphic service, by using a cipher word instead of a whole sentence, he may lawfully do so; but not at the risk of the telegraph company. If he desires to consummate an important commercial transaction, involving thousands of dollars, by using a few words which, apparently, only announce a common event or incident, he may lawfully do so; but he can not hold the telegraph company liable for the consequences of a single mistake in a word or a letter. The meaning of the words used is known only to the sender. Against frauds in such messages the telegraph company can not protect itself, except by requiring that the message shall be expressed in plain words, or by limiting its liability for cipher or obscure messages. The liability incurred by a mistake in a single cipher message, or negligence in sending it, as its contents may be explained by the sender, might exceed the profits of a year's business at the office. The validity of the condition limiting the defendant's liability for such messages is sustained by the following cases: *Baldwin v. Telegraph Co.*, 45 N. Y. 744; *Telegraph Co. v. McKinney*, Texas Court of Appeals, 1885, 5 Tex. Law R. 173; *Smith v. Telegraph Co.*, 8 Amer. & Eng Corp. Cases, 15; *McKay v. Telegraph Co.*, 16 Nev. 222; *Atk. & Bl. v. Telegraph Co.*, C. P. Louisville, 1883; *Tel. Co. v. Martin*, 9 Bradw., App.

Ct. 587; Allen's Tel. Cases, 5; *Dorgan v. Tel. Co.*, 1 Amer.
L. Rep., N. S. 407; *Harrison v. Tel. Co.*, 10 Amer. & Eng.
Corp. Cases, 600; *Daniel v. Tel. Co.*, 61 Tex. 452; 11 Chicago
Legal News, 276, decision by Judge Gresham; Allen's Tel.
Cases, 61, 71, 98, 163; 32 Barb. 530.

5. Another condition required that a claim for damages
should be presented within sixty days, which was not com-
plied with in this case. Much shorter limitations have been
sustained as valid, in actions against common carriers.
*Young v. Telegraph Co.*, 65 N. Y. 163; *Woolf v. Telegrayh
Co.*, 67 Penn. St. 83; *Express Co. v. Caldwell,* 21 Wall.
264; *Hyman v. Telegraph Co.*, 57 Wisc. 566; *Cole v.
Tel. Co.*, 33 Minn. 277; *Tel. Co. v. Edsall*, 63 Tex. 668;
*Tel. Co. v. McKinney*, 8 Amer. & Eng. Corp. Cases, 123,
note; *Tel. Co. v. Jones*, 95 Ind. 93; *Tel. Co. v. Rains*,
63 Tex. 27. In this connection, it will be noticed that the
claim set up in the amended complaint was never presented
at all, and the amendment was not filed until after the claim
was barred by the statute of limitations of one year.

6. These several conditions being valid, the plaintiff is
bound by them, in the absence of fraud, as express stipula-
tions of the contract.—*Wolf v. Tel. Co.*, 67 Penn. St. 83;
*Breese v. Telegraph Co.*, 48 N. Y. 132; *Birney v. Telegraph
Co.* 18 Md. 341; *Young v. Telegraph Co.*, 65 N. Y. 163;
51 N. Y. 166; *Cole v. Telegraph Co.*, 33 Minn. 227; *Goet-
ter, Weil & Co. v. Pickett*, 61 Ala. 387; 57 Wisc. 566;
Gray's Tel. Com., 52, § 28; Allen's Tel. Cases, 463, 663, 708.

7. The contract between plaintiff and his foreign corres-
pondent, as disclosed by the evidence, was a gambling trans-
action, and an action for damages growing out of it can
not be sustained.—*Lee v. Cassen*, 61 Ala. 317; *Armstrong
v. Toler*, 11 Wheat. 258; *W. U. Telegraph Co. v. Ferguson*,
57 Ind, 495; 11 Fed. Reporter, 193; 17 Fed. Reporter, 193;
Scott & J. Telegraph Law, 119; Greenh. Public Policy, 97;
Bish. Contracts, § 497.

8. There was no binding contract between plaintiff and
his foreign correspondent, unless his answering telegram was
received on Sunday; and a delivery on Sunday would have
been illegal. There is no presumption that the common law
prevails in Germany; and in the absence of proof as to the
law of that country, the law of the forum will be applied.
*Savage v. O'Neil*, 44 N. Y. 298; 72 Mo. 522; *Norris v.
Harris*, 15 Cal. 226; *Duval v. Marshall*, 30 Ark. 230;
*Cribbs v. Adams*, 13 Gray, Mass. 597; 8 Minn. 13; 4 Iowa,
464; Add. Contracts, 362.

9.  The remark of Winter to plaintiff, several days after the message was received for transmission, ought to have been excluded.—*Railroad Co. v. Ashcroft*, 48 Ala. 380; *Tanner v. L. & N. Railroad Co.*, 60 Ala. 621; *Ala. Gr. So. Railroad Co. v. Hawk*, 72 Ala. 112; Allen's Tel. Cases, 405; 113 Mass. 299; 63 Tex. 27.

10.  The construction of the message, or messages between the parties, was a question for the court, and ought not to have been submitted to the jury. Roth's offer was an entirety, and plaintiff was bound to accept or reject it as a whole. If he had already made contracts based on the acceptance of his message, he should at once have protected himself, on discovering that his message had not been sent; and he can not hold the defendant liable for damages resulting from his own neglect to do so.

RICE & WILEY, *contra*.—None of the printed terms and conditions indorsed on the blank form, on which the message was sent, has any application to the act of negligence on which the action is founded; nor could the defendant lawfully stipulate for exemption from liability for such negligence. As to the measure of damages, and kindred questions, the appellee relies on *Daughtery v. Telegraph Co.*, 75 Ala. 168; *Tyler v. Telegraph Co.*, 16 Ill. 421; 14 Amer. Law R. 38, note on p. 53; 60 Me. 9; 21 Amer. Rep. 168; *Iron Co. v. Erickson*, 33 Amer. R. 423; 1 Amer. R. 146; 4 Amer. R. 674; 9 Amer. R. 156. That the defendant can not set up the gambling feature of the contract, if it in fact existed, see *Pixley v. Boynton*, 79 Ill. 351; *Logan v. Musick*, 81 Ill. 415; *Roundtree v. Smith*, 108 U. S. 269; *Hawley v. Bibb*, 69 Ala. 55; *Williams v. Carr*, 80 N. C. 297; *Lehman v. Strassburger*, 2 Woods, C. C. 554; 59 Iowa, 435; 97 Ind. 191; 2 Hill, N. Y. 522; Dewy on Future Contracts, 50, 170–78.

CLOPTON, J.—The appellee brings the suit, to recover damages for the alleged negligent omission to forward a message addressed "*Victoria*, Bremen," which he delivered at the office of the appellant in Montgomery, June 14, 1884, for transmission. The message was intended for Johannes Roth, who resides in Bremen, Germany, *Victoria* being a cipher used to represent his name; and was a responsive acceptance of an offer to buy cotton, made by a cablegram which plaintiff received from him on the same day.

The grievance complained of is, that by reason of the negligence of the defendant's agents, the message was not forwarded, and plaintiff lost the benefit of the sale.

The complaint, as originally filed, contained but one count. More than a year after the commencement of the suit, it was amended by the addition of two other counts, to the first of which the defendant pleaded the statute of limitations, basing the defense on the ground that the count introduced a new cause of action. The original complaint alleges, that Roth's offer was to buy one thousand bales of cotton, but was intended to be, and was in fact, an acceptance of a previous proposition made by plaintiff to sell thirty-five hundred bales. The amendment avers a direct and positive offer to purchase thirty-five hundred bales. The message in response, and in acceptance of the offer, and the failure to forward which constitutes the causes of action, is substantially the same as set forth in both the original and amended complaint. The difference in the counts consists in the mere manner of stating Roth's proposal, which was the inducement to sending the message. There are also averments of other and additional special damages. The cablegram containing the offer does not enter into, nor constitute a part of the real cause of action, and is only material as affecting the *amount* of recovery, not the *right* to recover. The amendment varies the descriptive allegations of matter alleged as inducement, but does not introduce new matter, or a cause of action not already in issue. It was allowable under our statute, and related to the commencement of the action.—*Ala. Gr. So. R. R. Co. v. Arnold*, 80 Ala. 600.

2. The cablegram was delivered to plaintiff as coming from *Victoria*. Its delivery by defendant is the equivalent of an admission that *Victoria* was the sender; and, in connection with proof that *Victoria* is the cipher name of Roth, is *prima facie* sufficient to show, as against the defendant, that it was sent by him. The general rule, that secondary evidence of the contents of a writing is inadmissible unless the absence of the original is accounted for, is applicable to cablegrams. It is immaterial in this case which is considered the original—the message delivered by the sender to the forwarding office, or the telegram delivered by the company to the sendee at the point of destination. If the message delivered by Roth to the office in Bremen be the original, it is without the jurisdiction of the court; if the cablegram delivered to the plaintiff be regarded the original, the

preliminary proof of loss was, *prima facie*, sufficient. In either case, the secondary evidence of the contents was properly admitted.—*Whilden v. Planters & Merchants' Bank,* 64 Ala. 1.

3.    It is well settled, that an agent has no power to bind his principal by admissions, unless they come within the scope of his authority, and are so proximate to the main fact in point of time as to be regarded a part of the *"res gestæ,"* serving to elucidate or explain the nature and character of the transaction.—*Ala. Gr. So. R. R. Co. v. Hawk,* 72 Ala. 112.    For the purpose of showing that the message was not forwarded, the plaintiff was permitted, against the objection of defendant, to testify to a conversation in reference thereto with Winter, an agent of defendant, and also to introduce a letter to Winter and his reply.    At the time of the conversation, and of writing the letter, Winter was not in the performance of any duty relating to the transmission of the message, and had no authority to bind the defendant in the premises.    They were merely narrations of a past transaction.

4.    The lines operated by defendant do not extend to Bremen, and messages to be transmitted in that direction were delivered, in Nova Scotia, to a connecting cable line. The defendant is not compelled by any duty to the public to receive for transmission, or to secure the transmission of messages, beyond its own lines; and if such service be undertaken, may fix terms, conditions and regulations, not contrary to law or public policy, on which it will receive and undertake to secure the transmission of cablegrams to points of destination in foreign countries.    Cablegrams were required to be written on forms used by the company, on the back of which were printed the terms and conditions on which they would be received, sent forward on its lines to the terminus thereof, and there delivered to the next connecting company.    The message delivered by plaintiff was written on one of these forms, and signed by him.    Immediately preceding the message the following is printed: *"Send the following message, subject to the terms and conditions printed on the back hereof, which are agreed to."* Several of the pleas of the defendant are founded on these terms and conditions.    Those set out in the pleas, and specially relied on, are: that the company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery to the next connecting telegraph company, of

any unrepeated message, beyond the amount of the charge which may or shall accrue to the company; nor for errors in cipher or obscure messages; nor for damages in any case where the claim is not presented in writing, within sixty days after the sending of the message.

A repetition of the message was not required or requested; it was in cipher; and a written claim for damages was not presented within sixty days after the failure of the company to forward it. It was never forwarded, but by some inadvertence was placed in the receptacle of messages sent, and was checked as such. It is contended that the reception of the message for transmission was matter of contract, the terms and conditions of which regulate the duty and measure the liability of defendant; and that the company being in the performance of a duty voluntarily undertaken, and the negligence not being gross nor willful, the terms and conditions exonerate the defendant from liability for damages beyond the amount of the charge. Many authorities are cited by counsel to sustain the reasonable character of these, and similar terms and conditions, which, however, it is unnecessary for us to consider; for, if their reasonableness be conceded, before this arises another question—whether, on a proper construction, they govern and measure the liability of the company under the circumstances shown by the record in this case.

A telegraph company is engaged in a public calling, exercises important rights and powers, and owes corresponding duties to the public. By the established doctrine of this State, a carrier can not stipulate for exemption from liability for negligence, whether gross or willful, or otherwise.—*East Tenn., Va. & Ga. R. R. Co. v. Johnson*, 75 Ala. 596. The same rule has also been applied to telegraph companies. *Sweatland v. Ill. & Miss. Tel. Co.*, 27 Iowa, 433. On well settled principles, founded on public policy, a telegraph company can not contract to be relieved from the exercise of due care and diligence in the transmission of telegrams to a point of destination over its own lines; and when it undertakes to secure the transmission of a message to a point of destination beyond the *terminus* thereof over connecting lines, the same rule applies as to transmission to the *terminus* of its own lines. A construction that the terms and conditions secure immunity from the consequences of the fault or neglect of the company's officers or agents, would condemn the contract as contrary to law, and deny it any force or effect.

*Ayer v. W. U. Tel. Co.*, 10 An. Rep. (Me.) 495; Gray's
Com. by Tel., 49.   Under the influence of the rule, that
when a contract is reasonably susceptible of two constructions
—one contrary, and the other agreeable to law—that con-
struction should be adopted which will uphold the contract
and give it operation, we construe the terms and conditions
as only undertaking to exonerate the defendant from liability
for errors which may be committed in the transmission of
cipher or obscure messages, not caused by neglect, and for
mistakes or delay in the transmission or delivery, or for the
non-delivery of unrepeated messages, which may be caused
by any of the disturbing or obstructing agencies to which
transmission by electricity is subject—generally, it may be
said, in all cases where the negligence of the company is not
the cause of the error, mistake or delay, or non-delivery.
They have no operation, and are inapplicable, when the mes-
sage is never started from the receiving office in the course
of transmission.   A failure to start the message is not an
error, mistake or delay in its transmission or delivery, or a
non-delivery, as employed in the terms and conditions, but
is a breach of the entire contract.   A stipulation, that when
there is no effort to forward the message, the company should
only be liable for repayment of the charge, would be, in
effect, to release the company from all obligation to perform
the contract, because released from all liability for an *entire*
breach—tantamount to its rescission.—*Birney v. N. Y. &
Wash. Tel. Co.*, 18 Md. 341; *Sprague v. Wes. Un. Tel. Co.*,
6 Daly, 200.

6.   The limitation as to the time in which a claim for
damages must be presented, is in the nature of a condition sub-
sequent, the non-performence of which operates a forfeiture of
all damages.   A condition operating a forfeiture, not being
favored, will not be extended beyond the express or clearly
implied terms.   The terms and conditions do not contem-
plate that the company's agents would wholly fail to send a
telegram in the regular and usual course of business, and do
not provide, when there is no effort to forward the message,
for immunity from damages by reason of omission to present
the claim within the contractual period of limitation.   By
the express words of the contract, the limitation does not
commence to run, until and from the time the message is
started—"*after the sending* of the message".   There can
arise no implication from these words that it was meant and
intended that the limitation should begin to run from any

date prior to the sending of the message, from the time it is received for transmission. It has no operation, unless there has been a partial performance by forwarding the message. When there is no attempt to start it, no effort to perform the contract, the right of action is not barred, unless the period prescribed by the statute of limitations has expired.

7. The next most important question relates to the measure of damages. It is manifest that, if the message was received and not forwarded, the plaintiff is entitled to recover at least the amount paid for its transmission. For this reason, if no other, the affirmative charge requested by the defendant was properly refused. But the material question is, what, beyond this charge, constitutes recoverable damages? It is insisted that the only damages recoverable are such as were in the contemplation of the parties at the time the contract was made; and that the message being in cipher, and its purport and importance not having been communicated, no damages in excess of the charge paid could have been in their contemplation. Counsel claim that such is the import of the rule established in *Hadley v. Baxendale*, 9 Exch. 341, and cite many authorities to support their contention. That case was fully considered and reviewed in *Daughtery v. American Union Telegraph Company*, 75 Ala. 168. This decision is now assailed as unsupported by the weight of authority, and as not founded on reason and right. The contention is based on a misunderstanding of the rule intended to be declared in the *Hadley case*, and of the effect of the ruling in the *Daughtery case*. We do not understand the latter as intending to depart from the principle declared in the former, when properly understood and applied. That principle as declared was construed by this court in reference to the facts of the case and the questions involved, which called for the declaration of a rule applicable to recoverable damages arising from *special* circumstances. The principle, as thus construed, is, that special circumstances which take the contract out of the usual course of things, must be communicated, in order to become an element of the duty in reference to which the parties are presumed to contract, and if unknown, damages suffered by reason of the existence of such special circumstances are not recoverable; but that, in all cases, the damages which would naturally, generally, and proximately result from a breach of the contract, "according to the usual course of things," are recoverable; whether or not actually contemplated by the parties,

the law conclusively presumes them to have been in their contemplation. Such, as this court understands, is the proper construction to be placed on the words, "in the contemplation of both parties at the time they made the conract," as employed in the statement of recoverable damages in *Hadley v. Baxendale.* It is true the opinion in *Daughtery's case* criticised this phrase, so often used as generally expressive of recoverable damages, as inapt and misleading, subjecting the rule to misapplication; but, beyond this criticism of the mere language, no attack was made on *Hadley v. Baxendale.* The contention in *Daughtery's case* was, as in this, that in respect to telegraph messages in cipher, the contents of which are not communicated, only the damages that were in the contemplation of the parties are recoverable. The ruling was, that the liability of the telegraph company for damages does not depend on the knowledge the operator may have of the contents of the message. The argument sustains the conclusion, and relieves any necessity of a rediscussion. We adhere to the doctrine declared, and hold that, on the facts shown by the record, if the message was not sent, and the failure to send it was in consequence of the fault or neglect of the company's agents, as to which we intimate no opinion, the plaintiff is entitled to recover the damages which, according to the usual course of things, naturally grew out of such failure ; but not damages arising from any special circumstances, the same not having been communicated.

9–10. In estimating the damages, the contract with Roth, as it would have been made had the message of acceptance been delivered, must be regarded as an *entirety.* The plaintiff can not accept a part of the contract, and claim its benefits, and reject another part, and avoid its burdens. The offer contained a condition, that Roth should be authorized to purchase, for account of plaintiff, November contracts in New York, at the closing quotations of the day previous. It is undisputed that plaintiff would have sustained losses on such contracts. The net profits which would have been realized from the contract as an entirety, constitute the actual damages suffered by plaintiff. There is, however, a modification of this rule. As soon as he was informed the message had not been sent, it became the duty of plaintiff to take, within a reasonable time, steps to prevent further loss. If he had the cotton to deliver, or had arranged to procure it for delivery, he should have made an effort to sell it; and

if he made future contracts for its purchase, for the purpose of fulfilling his contract of sale, he was not authorized to extend them from month to month on a declining market, and fasten the loss on defendant.—*Daughtery v. Am. U. Telegraph Co., supra.*

11–12.　Under the rule we have declared as regulating the measure of damages, the losses on account of the future contracts carried by plaintiff from the business of the previous season, and of the cotton bought from Clisby, can not be regarded or estimated as elements of recoverable damages; and the evidence showing such losses was irrelevant.　They are uncommunicated special circumstances.　Neither was the .evidence relevant which tended to show the embarrassed financial condition of plaintiff.　It raised·a remote collateral issue, on which neither the liability of the defendant, nor the proper ascertainment of the damages depends.

13.　But, as data from which to ascertain the amount of damages, the court, on the evidence, submitted to the jury as an inference of fact, whether there was an arrangement between the parties by which the cablegram was understood to mean, and did mean, a purchase of thirty-five hundred bales of cotton, and whether Roth would have been bound to accept that number of bales.　The evidence on which the construction of the contract was thus left to the jury, consists of a previous correspondence between the parties by mail, the cablegram, and the message delivered by plaintiff at the office of defendant.　It is as follows:　In May, 1884, plaintiff received a letter from Roth, proposing to buy cotton, the contents of which are not made known.　About the last of the same month, plaintiff wrote Roth rejecting his offer, and proposing to sell him from 3,500 to 5,000 bales, if he would take the pence price in Europe, and November contracts in New York on the day the trade is made, as the basis.　On June 14th, thereafter, Roth sent plaintiff a cablegram in cipher, which is translated as follows:—"*We offer firm for 1000 bales average middling, nothing under low middling, at 6-8 d. cost, insurance and freight and six per-cent., prompt shipment by steamer, price 1-32 of a penny more, September delivery, provided give us authority to buy, at yesterday's closing quotations, November, New York, for your account.*" In response the plaintiff delivered, for transmission to Roth, the following message:—"Accept the offer.　How much?" In view of the fact that the proposition of the plaintiff was to sell from 3,500 to 5,000 bales, the inquiry "How much,"

indicated that plaintiff did not understand the cablegram to be an offer to purchase any definite number. If the construction of the contract was properly submitted to the jury, and the cablegrem can be reasonably construed as an acceptance of the previous proposition of plaintiff, no specific quantity of cotton was agreed on, and there was no operative sale.

But, was the construction of the contract properly submitted to the jury? When the legal effect and operation of a written instrument depends upon evidence of collateral facts "*in pais*," the inference of fact may, and should be submitted to the jury; but when the evidence consists wholly of writings, and the legal effect and operation solely depend upon the meaning and construction of the words employed, it is the province and duty of the court to construe written instruments and declare their legal effect.—*Boykin v. Bank of Mobile*, 72 Ala. 262. The evidence on which the construction of the contract was submitted to the jury, consists wholly of written instruments; being an offer of undisclosed terms to purchase, its rejection, accompanied by a counter proposition to sell, which, without more, is followed by the cablegram, and the acceptance of the offer thereby made. There is nothing indeterminate or obscure; nothing for construction, or requiring the aid of extrinsic evidence. The cablegram varies the terms of plaintiff's proposition, not only as to the number of bales, but also as to the price at which the November contracts should be purchased; the proposition being, that the basis should be the prices on the *day the trade is made*, and the cablegram being the *closing quotations of the previous day*. On no principle of legal construction can an offer to purchase a *specified* number of bales on *specified* terms be regarded an acceptance of a proposition to sell a larger and indefinite number on different terms. Had Roth's offer been accepted, he would not have been bound to take any number other than that stated in the cablegram. The court should have construed the writings, and instructed the jury that had the contract been completed, it would have been for the sale of one thousand bales and no more.

14. The record does not make a case for the allowance of exemplary damages. The operator was not cognizant of the contents or importance of the message. The evidence does not tend to show that there was any negligence, wanton or willful, or so gross as to evince an entire want of care, and to

raise the presumption of "a conscious indifference to conse-quences."—*Leinkauff v. Morris*, 66 Ala. 406; *Ala. Gr. So. R. R. Co. v. Arnold, supra*. Under the circumstances dis-closed by the evidence, the plaintiff is only entitled to a just compensation for the actual loss sustained, if the failure to send the message was the result of negligence. The actual loss is the profits which he would have made had the con-tract of sale been perfected. In order to determine the profits, the difference between the contract price and what it would have cost plaintiff to procure the cotton and deliver it in Bremen in time for the September delivery, must be first ascertained. From this difference must be deducted the amount of the losses which plaintiff would have sustained, had the November contracts been purchased on the closing quotations of the day previous. The remainder, with the amount of the charge paid by plaintiff for the transmission of the message, with interest, is the measure of recoverable damages. On the other hand, if the completion and per-formance of the contract, regarded as an entirety, would have resulted in loss to the plaintiff; that is, if the losses on the November contracts would have exceeded the gains on the sale to Roth; he is not entitled to recover any damages, as growing out of the mere failure to complete the contract, other than nominal.

15. The cablegram purporting that plaintiff should pro-cure the cotton in this country, for shipment to Bremen, evi-dence of the price of cotton in Liverpool is irrelevant, there being no proof of an influencing or regulating relation, or of a mutual dependence, between the markets; and all evi-dence relating to gains or losses should be excluded, which does not tend to afford proper data from which to ascertain the actual gain or loss arising from the contract on the prin-ciples herein declared.

16. Evidence was introduced in reference to the charac-ter of the contracts. The defendant had the full benefit of the defense of illegality on the trial. There being no evi-dence tending to show that there was to be no delivery of the cotton, we need not consider the sufficiency of the pleas based on the gambling character of the contract. We may observe, however, that the pleas do not aver any law of Ger-many, where performance was to be made, which declares such contracts illegal, and we are without presumption. *Castleman v. Jeffries*, 60 Ala. 380. And there is no imme-diate or dependent connection between the offer of Roth and

36

the future contracts of purchase made previously to the offer. These, we have already said, are not to be regarded as elements of damage.

17. By usage, Roth was not bound by the acceptance of his offer, unless it was delivered to him within twenty-four hours after the receipt of the offer. It was delivered to the telegraph company for transmission, late on Saturday, and, to come within the required time, the delivery to Roth would have been on Sunday. On this ground, the defendant contends that plaintiff's act, sending the telegram, is illegal, and therefore he could not have been legally damaged by the failure of the company to forward it. Ordinarily, a contract by telegraph is complete when a telegram of acceptance, the offer not having been withdrawn, is placed by the offeree with the telegraph company for transmission, the parties having adopted such mode of communication in making the contract. All that the plaintiff could reasonably have done to complete the contract, was done on Saturday. A delivery within the limited time would have related back, and constituted a complete contract from the time the telegram of acceptance was deposited in the Montgomery office. By statute, contracts made on Sunday, and not within the statutory exceptions, are void.—Code, § 2138. The contract to transmit the message was wholly made on Saturday, and its validity is not destroyed nor impaired by a condition, that in order to bind the offeree it must be delivered within a limited time, though compliance therewith may require delivery in Bremen on Sunday. The mere delivery of a telegram on Sunday is not an act prohibited by either statutory or common law; and in the absence of proof, we can not presume that such delivery is prohibited by the laws of Germany. The condition that the acceptance must be delivered within a specified time is a condition in favor of the offeree, and may be waived by him. The defendant can not set up that a compliance with the condition would necessitate a delivery on Sunday, to avoid the consequences of an entire breach of a valid and legal contract.

Other questions presented become, under the views we have taken of the case, unimportant and immaterial, and their consideration is unnecessary.

Reversed and remanded.

SOMERVILLE, J.—I do not concur in the rule announced in the case of *Daughtery v. Amer. U. Tel. Co.*,

75 Ala. 168, and affirmed in the foregoing opinion, relating
to the proper measure of damages for neglecting to transmit
or deliver cipher dispatches, or such as are wholly unintelli-
ble to the agents of the telegraph company, upon whom the
duty of transmission devolves.   In my judgment, the rule
which is best supported by reason, which more fairly com-
ports with the ends of justice, and is sustained by the over-
whelming weight of authority, limits the measure of damages
in such cases to such as are nominal, or, at most, the price
paid for sending the message.   With due deference for the
opinion of my associates, it seems to me that this is the neces-
sary and logical result of the rule declared in *Hadley v.
Baxendale*, 9 Exch. 341 (s. c., 23 L. J. Ex. 179), which
comes to us with the enlightened sanction of the civil law,
and is now so firmly incorporated into our common-law sys-
tem of jurisprudence as no longer to be doubted, or even
modified in the accepted interpretation which has, almost
with one voice, been imputed to it by the most learned law-
writers, and eminent jurists of the present century.   This
rule has been universally accepted to mean, that liability for
damages, in cases of mere breach of contract, must have
some necessary relation to what may natually be expected to
follow its violation, or to such results as may be fairly sup-
posed, in the eye of the law, to have entered into the con-
templation of the parties when they made the contract.   The
knowledge which is the basis of this liability, and which im-
putes notice of the object of the contract, can be derived
only in one of two ways:   (1) from the face of the message
itself; or (2) from extrinsic information imparted by the
sender.   Unintelligible, or cipher messages, give no clue as
to the special damage that may result from negligence in
transmitting them, and afford no ground for the company to
suppose that any loss other than nominal can follow from a
failure to send them.   The wisdom and justice of the rule is
nowhere better illustrated than in the transmission of such
dispatches.   When the sender elects to studiously conceal
from the operator the contents or nature of the message, he
thereby deliberately puts the telegraph company in the dark-
ness of ignorance as to the character of the duty imposed
upon it, or the magnitude of its liability.   The company can
not know, therefore, whether the breach of the obligation
will probably be followed by a hundred, or hundred thousand
dollars damages.   This is both unreasonable and unjust, for
the reason that telegraph companies are not common carriers,

or insurers, but their liability, like that of ordinary bailees, is based upon the degree of care or negligence exercised by them in the discharge of their duties. The care and diligence must, then, upon every well settled principle of our jurisprudence, be in proportion to the duty in hand, varying according to the magnitude and nature of the subject-matter of the bailment.—*Birney v. N. Y. Telegraph Co.*, 18 Md. 341; s. c., 81 Amer. Dec. 607, 614, *note*. Nothing is more important or just, in this view of the subject, than that the law should require the sender at his hazard to disclose the meaning or nature of the message, in order that the company may observe such precautions as may be necessary to guard itself against the risk incident to the duty to be performed.—*U. S. Telegraph Co. v. Gildersleve*, 29 Md.; s. c., 96 Amer. Dec. 519. The contrary rule, moreover, opens wide the door for the perpetration of unlimited frauds and perjuries, especially where, as now under the statutes of this State, parties to suits are permitted to testify without regard to the degree of interest they may have in the results of the pending litigation. The policy of the rule adopted in *Daughtery's case* would seem, therefore, to be most pernicious in its tendencies.

In addition to these considerations, the rule, allowing only nominal damages in cases of this kind, is sustained, as I have said, by the overwhelming weight of authority in this country, as well as in England. I am opposed to any departure from this salutary and settled rule, based, as I believe it to be, upon the broad foundations of justice, fair dealing, and sound public policy. I need but refer to the following authorities in support of these views:*Baldwin v. U. S. Telegraph Co.*, 45 N. Y. 744; s. c., 6 Amer. Rep. 165; Allen's Tel. Cases, 613; *Landsberger v. Magnetic Tel. Co.*, 32 Barb. 536;. *Daniel v. W. Un. Tel. Co.*, 61 Tex. 452; s. c., 48 Amer. Rep. 305; *U. S. Tel. Co. v. Gildersleve*, 96 Amer. Dec. 519; *First Nat. Bank v. Tel. Co.*, 30 Ohio St. 555; s. c., 27 Amer. Rep. 486; *Stevenson v. Montreal Tel. Co.*, 16 U. C. (Q. B.) 530; Gray on Communication by Telegraph (1885), §§ 87–97; *W. Un. Tel. Co. v. Martin*, 9 Brad. (Ill. App.) 587; 3 Suth. on Damages, 298–300; Wood's Mayne on Damages, §§ 35, *et seq.; Sanders v. Stuart*, 45 L. J. C. P. 682; s. c., Moak's Eng. Rep. 286; *Beaupre v. Pac. & A. Tel. Co.*, 21 Minn. 155; *Mackey v. W. Un. Tel. Co.*, 16 Nev. 222; *Candee v. W. Un. Tel. Co.*, 34 Wis. 471; s. c., 17 Amer. Rep. 452; *Camp v. W. Un. Tel. Co.*, 71 Amer. Dec. 472, *note;* 1 Sedg-

wick on Dam. (7th Ed.), 228, *note; W. Un. Tel. Co. v. Hall*, 124 U. S. 444.

The only other courts of last resort that have taken an opposite view touching this subject of liability for cipher dispatches, so far as I have been able to discover, are those of Virginia and Florida, and these decisions are by divided courts.—*W. Un. Tel. Co. v. Reynolds*, 77 Va. 173; s. c., 46 Amer. Rep. 716; *W. Un. Tel. Co. v. Hyer*, Sup. Ct. Fla., 1886, 1 So. Rep. 129.