### CHESEBROUGH v. WESTERN UNION TELEGRAPH CO.

(Supreme Court, Appellate Term.  May 27, 1912.)

CONTRACTS (§ 26*)—OFFER AND ACCEPTANCE—REVOCATION.

A broker wired a customer that he had purchased coffee for him subject to his approval, and must have an immediate reply. This message was received at A., where the customer lived, about 1 o'clock, but was not delivered until 2:50, when the customer immediately telegraphed his approval of the purchase. Before this approval was received, the coffee exchange had closed for the day, and the broker, on account of the delay, elected to treat the purchase as made for his own account, instead of for the customer. In the meantime the price of coffee had gone up, and it was impossible to purchase at the price of the first purchase. *Held*, that the broker's offer to hold the coffee for the customer if he accepted immediately on receipt of the offer, in the absence of any limitation, was presumed to continue until revoked and was not revoked by the delay in delivery; the broker having himself adopted the telegraph as a means of communication, and the customer, when he accepted immediately on re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ceipt of the offer, became the owner of the coffee, and hence, having suffered no loss from the delay, had no right of action against the telegraph company.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 119, 120; Dec. Dig. § 26.*]

Appeal from City Court of New York, Trial Term.

Action by Robert A. Chesebrough against the Western Union Telegraph Company. From a judgment for plaintiff after a trial by the court without a jury, defendant appeals. Reversed, and complaint dismissed.

Argued May term, 1912, before SEABURY, LEHMAN, and PAGE, JJ.

George H. Fearons and Albert T. Benedict, both of New York City, for appellant.

Stoddard & Mark, of New York City (John M. Stoddard and Norman Wilmer Chandler, both of New York City, of counsel), for respondent.

SEABURY, J. This is an action to recover damages alleged to have been sustained by the plaintiff in consequence of the delayed delivery of a telegraph message. The facts are conceded. On September 12, 1910, the plaintiff, who was residing at Allenhurst, N. J., by letter instructed one Bayne, a broker, to purchase 2,000 bags of coffee for August delivery at 8.53 cents per pound. The letter was received by Bayne during the forenoon of September 13, 1910. Bayne attempted to purchase the coffee at 8.53 cents per pound during the forenoon of September 13th, but was unable to purchase at this price, as the market had advanced. At about noon of that day Bayne did purchase the required amount of coffee at 8.54 cents per pound. Upon completing this purchase Bayne delivered the following message to the defendant for transmission to the plaintiff:

"Sept. 13, 1910.

"To Robt. A. Chesebrough
     "218 Elberon Ave.,
     "Allenhurst, N. J.

"Letter just received bought two thousand August eight fifty four subject your approval eight fifty five now bid must have immediate reply by wire. Rush.                                              C. E. Bayne."

This message was received at Allenhurst a little before 1 p. m. on September 13th. It was not sent to the plaintiff's residence, and was not delivered until 2:50 p. m. on that day at the defendant's office at Allenhurst. Immediately upon its receipt the plaintiff wired the following reply to Bayne:

"Telegram just received. Purchase approved at eight fifty four."

This message was received by Bayne at his office at 3:40 p. m. It was stipulated upon the trial that the time consumed, about 50 minutes, in transmitting and delivering plaintiff's reply, "was the requisite length of time for the transmission and delivery of said message." At the time of the receipt of the last message the coffee exchange had

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

closed, and it was impossible to purchase coffee at less than 8.80 cents per pound. The market price of August coffee was not less than 8.80 cents per pound at any time on September 14th, 15th, and 16th, and up to the time that the plaintiff actually purchased another lot of 2,000 bags of August coffee at 8.80 cents per pound on September 14th.

It is claimed that, by reason of the defendant's delay in transmitting the message on September 13th from Bayne to the plaintiff, the plaintiff lost the benefit of the purchase which Bayne had made subject to the approval of the plaintiff, and that his loss is the difference between 8.54 cents per pound and 8.80 cents per pound, or $676, which, with interest, is the amount for which the plaintiff recovered judgment. Upon this appeal the defendant makes no claim that the contract, in pursuance of which the message was received by it for transmission, relieved it of liability. The claim upon which the appellant now relies is that the plaintiff suffered no loss, because, at the instant the plaintiff filed his message of acceptance, he became, as against Bayne, the owner of the 2,000 bags of August coffee which had been purchased for his account by Bayne.

It is necessary, therefore, to determine as to whether, as between the plaintiff and Bayne, the plaintiff lost his right to have the purchase treated as having been made for his benefit. If he did not, he sustained no loss, and has no cause of action against this defendant. If Bayne, the broker, was within his rights in treating the purchase as made for his own account, in view of the delay, then the plaintiff has a cause of action against this defendant. Bayne selected the telegraph as a means of communicating his offer to the plaintiff. Under the offer, the broker was obliged to hold the coffee purchased for the account of the customer, if the latter, immediately on receipt of the offer, wired his acceptance. This the customer did. As soon as he sent the message accepting the broker's offer, the contract between the customer and the broker was complete, and the coffee purchased was the property of the plaintiff. The fact that, owing to the delay in the delivery of the broker's message, the customer's reply was not received until several hours later than the broker anticipated that he would receive a reply, does not affect the legal relations existing between the customer and the broker. The offer contained in the broker's message manifested a willingness on his part to contract, and, in the absence of any limitation being prescribed, this willingness is presumed to continue until revoked. The customer accepted the offer before it was revoked when he sent the telegram accepting the offer. The instant that this was done the contract was complete, and, under the contract then made, the coffee which the broker had purchased became the property of the customer. The general principle here applied is so well settled, and has been so frequently commented upon, that it is needless to do more than cite some of the cases which show its origin, development, and application. Adams v. Lindsell, 1 Barn. & Ald. 681; Dunlop v. Higgins, 12 Jurist, 22; Household Fire Ins. Co. v. Grant, 4 Exch. D. 216; Mactier v. Frith, 6 Wend. 103, 21 Am. Dec. 262; Vassar v. Camp, 11 N. Y. 441; Trevor v. Wood, 36

N. Y. 307, 93 Am. Dec. 511; Watson v. Russell, 149 N. Y. 391, 44 N. E. 161; U. M. Realty & Imp. Co. v. Roth, 193 N. Y. 581, 86 N. E. 544. Nor is the theory at all tenable that the offer of the broker was to be considered by the customer as continuing, only in the event of its prompt delivery. In Trevor v. Wood, supra, the court said:

"I cannot conceive upon what principle an agreement to communicate by telegraph can be held to be in effect a warranty by each party that his communication to the other shall be received. On the contrary, by agreeing beforehand to adopt that means of communication, the parties mutually assume its hazards, which are principally as to the prompt receipt of the dispatches."

As between the plaintiff and Bayne, the coffee purchased by the latter became, by virtue of the plaintiff's prompt acceptance of the offer of the broker, the property of the plaintiff. Such being the case, it is plain that the plaintiff has no cause of action against this defendant. If the broker deprived the plaintiff of the coffee purchased, then the plaintiff has a cause of action against him, and, if the broker sustained a loss, he has a cause of action against this defendant. I can see no basis or legal theory upon which the plaintiff can assert a claim against this defendant.

It follows that the judgment should be reversed, with costs to the appellant, and the complaint dismissed, with costs. All concur.