(79 Misc. Rep. 10.)

### BERTUCH et al. v. UNITED STATES & HAYTI TELEGRAPH & CABLE CO.

(Supreme Court, Appellate Term, First Department.  January 9, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 36*)—CABLE MESSAGE—AGREEMENT TO WITHDRAW—FAILURE TO PERFORM.

Where a cable company to which plaintiff had delivered a cipher message for transmission to Brazil agreed to stop the message, but negligently failed to do so, resulting in loss to plaintiff, it was liable for the damage sustained.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 26, 31;  Dec. Dig. § 36.*]

2. TELEGRAPHS AND TELEPHONES (§ 56*)—CABLE MESSAGE—AGREEMENT TO PREVENT DELIVERY—FAILURE TO PERFORM—RIGHT TO SUE.

Where defendant cable company agreed with the sender of a cipher cable message to stop the same and prevent delivery, but negligently failed to do so, the right to sue either for breach of contract or in tort is in the sender and not in the addressee.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 37;  Dec. Dig. § 56.*]

3. TELEGRAPHS AND TELEPHONES (§ 36*)—CABLE MESSAGE—AGREEMENT TO STOP—BREACH—SERVICE TOLL.

Where a cable company agreed to stop a message previously delivered to it for transmission, but negligently failed to do so, resulting in loss to the sender, it was no defense to an action for the damages sustained that the stopping of the message would require the sending of an additional message for which defendant was entitled to additional tolls; no additional tolls having been charged or demanded.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 26, 31;  Dec. Dig. § 36.*]

4. TELEGRAPHS AND TELEPHONES (§ 67*)—CABLE MESSAGE—AGREEMENT TO STOP—BREACH—NOMINAL DAMAGES.

Where plaintiff had delivered to defendant cable company a cipher cable message, unintelligible except to the parties, with no further information than that it related to a business matter, and afterwards requested defendant to stop delivery, which defendant agreed but negligently failed to do, plaintiffs were only entitled to recover nominal damages, whether the suit was brought for breach of contract or in tort.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68;  Dec. Dig. § 67.*]

5. TELEGRAPHS AND TELEPHONES (§ 66*)—CABLE MESSAGE—AGREEMENT TC STOP—FAILURE TO PERFORM—GROSS NEGLIGENCE.

Defendant cable company operated in connection with another company a cable line between New York and Brazil.  Plaintiff delivered to it a cipher message, and later requested defendant to stop the message, which it agreed to do.  Defendant made efforts to that end which resulted in failure because of some mistake or error of an operator at some distant post from where the message was sent.  Whether the operator who failed in the performance of his duty was an employé of the defendant or of a connecting line did not appear.  *Held,* that defendant was not chargeable with gross negligence.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63;  Dec. Dig. § 66.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. TELEGRAPHS AND TELEPHONES (§ 67*)—FAILURE TO STOP MESSAGE—SPE-
CIAL DAMAGES—KNOWLEDGE OF FACT.

The mere fact that a cable company knew that a cipher message re-
lated to a "business matter" did not charge it with knowledge of the na-
ture of a message so as to render it liable for special damages for fail-
ure to stop its transmission on the order of the sender.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§§ 64–68; Dec. Dig. § 67.*]

Guy, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Paul Bertuch and others, doing business under the name
of Hagemeyer & Brunn, against United States & Hayti Telegraph &
Cable Company. From a Municipal Court judgment in favor of
plaintiffs, defendant appeals. Modified and affirmed.

Argued December term, 1912, before SEABURY, GUY, and GE-
RARD, JJ.

Roberts, Hepburn & des Garennes, of New York City (Francis Ray-
mond Stark, of New York City, of counsel), for appellant.

Cardozo & Nathan, of New York City (Michael H. Cardozo, Jr.,
of New York City, of counsel), for respondents.

SEABURY, J. This is an action to recover damages caused by rea-
son of the act of the defendant in sending without authority a cipher
message, the sending of which resulted in damage to the plaintiffs.
The facts are undisputed. Prior to August 15, 1911, Nunes, Sobrinho
& Co., at Para, Brazil, advised the plaintiffs that they had bought for
their account and would ship by steamer five tons of rubber of a spec-
ified quality at a specified price. On August 15, 1911, the plaintiffs
filed with the defendant telegraph company, for transmission by cable
to Nunes, Sobrinho & Co., a message written in cipher, which con-
tained the single word "Auzholzen." The meaning of the cipher
message was, "Your acceptance of offer came too late." Shortly after
the cipher message had been delivered to the defendant, the plaintiffs
were informed through Henderson & Korn, rubber brokers, of an
opportunity to sell the rubber offered by Nunes, Sobrinho & Co., and
they at once telephoned to the defendant and asked if the cipher mes-
sage could be stopped. The agent of the defendant receiving this in-
quiry said that the message had gone forward, but that it could and
would be stopped. Within an hour thereafter, the plaintiffs again in-
quired as to the message, and were told that it had been stopped.
Relying upon this information, the plaintiffs made a contract to resell
the rubber to B. F. Goodrich Company. In September, 1911, the
plaintiffs learned that the cipher message of August 15th had been
delivered to Nunes, Sobrinho & Co. As soon as the plaintiffs ascer-
tained that they would not receive the five tons of rubber from Nunes,
Sobrinho & Co., they purchased that amount of rubber in the market
so as to be able to make delivery under their contract with B. F. Good-
rich Company. The plaintiffs have recovered a judgment for the dif-
ference between the price at which Nunes, Sobrinho & Co. offered

the rubber, and the price which the plaintiffs were required to pay in the market for rubber bought in order to enable them to fulfill their contract with B. F. Goodrich Company.

The exceptions of the appellant to rulings upon evidence presents no prejudicial error, and there seems to be no dispute that the record contains all the facts as they actually occurred. The contention of the appellant that its operator was not authorized to agree on behalf of the defendant that the message would be stopped, and that the plaintiffs' request to stop the message involved the performance of an illegal act, because it required the sending of a free message in violation of law, do not impress us as possessing merit. If the defendant was entitled to an additional charge for the service it assumed to render in stopping the message, it should have collected it; but its failure to demand prepayment is not an excuse for its omission to perform in a careful manner the obligation which it assumed.

This appeal presents but two questions which require discussion: First, was the unauthorized sending of the cipher message an actionable wrong against these plaintiffs? And, second, if it was, can more than nominal damages be recovered?

[1] It is settled that, if one contracts with a telegraph company to transmit a message, and the latter fails to exercise reasonable care in the transmission, whereby the sender suffers loss, the sender has a cause of action against the telegraph company. This principle has been applied in cases where the telegraph company has failed to deliver a message which it agrees to deliver, and we think it is applicable to this case, where the telegraph company delivered a message which it was not authorized to deliver.

[2] The claim of the appellant that the addressee of the message alone has a cause of action against the defendant is without merit. The delivery of the message to the addressee did not violate any right of the addressee, and therefore the latter had no cause of action against the telegraph company in tort, and, as the addressee had no contract with the telegraph company, it had no cause of action for breach of contract. This view does not conflict with the rule applied in Trevor v. Wood, 36 N. Y. 307, 93 Am. Dec. 511, and in Chesebrough v. Western Union Telegraph Co., 76 Misc. Rep. 516, 135 N. Y. Supp. 583, cited by the appellant. In those cases the sender of the message had adopted the method of communication used by the addressee, and, as between the sender of the message and the addressee, the sender had a right of action against the addressee. Here the plaintiffs have no cause of action against the addressee, and are seeking to assert a cause of action growing out of the negligent manner in which the telegraph company performed its public duty under its contract with them. If any cause of action arises out of the facts of this case against the defendant, it exists in favor of the plaintiffs and not in favor of the addressee.

The plaintiffs contracted with the defendant to transmit the message, and before the message was delivered, and while there was ample time and opportunity to prevent its delivery, the plaintiffs instructed the defendant to stop the message, and the defendant assumed to do so.

After the defendant received instructions to stop the message and agreed to do so, its duty was to exercise reasonable care to bring about this result. The delivery of the message resulted in harm to the plaintiffs, and this harm the defendant could have avoided by the exercise of reasonable care. Its omission to exercise this degree of care rendered it liable to the plaintiffs for its neglect. It is true that the original instruction of the plaintiffs required the defendant to send the message; but, while the message was under the control of the defendant, it was none the less the duty of the defendant to exercise reasonable efforts to stop the message if the sender so directed. If one gives a message to the operator of a telegraph company and pays the charge, and, before the operator sends the message, the sender alters his purpose and directs that the message shall not be sent, it will hardly be contended that the operator would have the right to persist in sending the message. While the message remained under the control of the telegraph company, and while ample time and opportunity existed to enable the telegraph company to stop the message, we think that the message, so far as the telegraph company is concerned, was subject to the order of the sender, and, if the sender directed that it should be stopped, it was the duty of the telegraph company to use reasonable care to stop it.

[3] That, under the circumstances, the telegraph company could exact an additional charge, is probably true; but that fact is of no importance here, because it assumed to perform this duty without asking for prepayment of additional compensation. In the absence of a request for prepayment, we are not justified in assuming that, if the request had been made, the plaintiffs would have refused to comply with it.

While the plaintiffs might maintain an action for damages under their contract with the defendant for the negligent breach of duty, the right of the plaintiffs to proceed against the company in tort is equally clear. In Jones on Telegraph & Telephone Companies, § 468, it is said that:

"The weight of authority is that the sender may maintain an action for the breach of the contract, or he may proceed against the company for the breach of its public duty or sue in tort."

In Brown v. Chicago, etc., R. R. Co., 54 Wis. 342, 11 N. W.. 356, 911, 41 Am. Rep. 41, the court said:

"All the cases hold that the person injured through the negligence or carelessness of the carrier may proceed either upon contract, alleging the careless or negligent acts of the defendant as a breach of the contract, or he may proceed in tort, making the carelessness and negligence of the company the ground of his right of recovery."

[4] It only remains to be determined whether, under the circumstances disclosed, the plaintiffs are entitled to recover more than nominal damages. The plaintiffs' election to sue in tort has apparently been made on the assumption that, in so far as the measure of damages is concerned, there is a radical difference whether the action is in contract or tort. The contention of the plaintiffs seems to be that, if they had

sued in contract, the rule declared in Hadley v. Baxendale, 9 Exch. 34, would be applicable and would limit their recovery to the damages naturally arising out of the breach, or such as may reasonably be supposed to have been within the contemplation of both parties at the time the contract was made as the probable result of its breach, but that, inasmuch as they have elected to sue in tort, they are entitled to recover for any damages which are the result of the defendant's neglect. In cases of the class, within which the case at bar falls, there is no significance in the distinction which the plaintiffs seek to emphasize. Whether the plaintiffs sounded their action in tort or contract is immaterial, as in either event the plaintiffs are only entitled to recover the damages which would be satisfaction for such loss as might reasonably have been expected under the particular circumstances to occur. In Jones on Telegraph & Telephone Companies, § 518, it is said:

"The general rule, however, for ascertaining the measure of damages, is applicable in both kinds of actions. In an action in tort, or for a breach of a public duty, the damages which a plaintiff can recover are in satisfaction of the natural and proximate consequences of the defendant's act; in other words, they are in satisfaction of the loss that might reasonably have been expected under the particular circumstances to occur."

The general rule is that a telegraph company receiving a cipher message, or one otherwise unintelligible, the nature and purpose of which is only known to the sender and addressee, is liable in the event of negligence only for nominal damages. This is the rule which prevails in England and Canada, in the United States Supreme Court, in New York, Massachusetts, Wisconsin, and most of the other states. Sanders v. Stuart, 1 Law Rep. Common Pleas Division, 326; Kinghorn v. Montreal Tel. Co., 18 Up. Can. (Q. B.) 60; Primrose v. Western Union Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883; Western Union Telegraph Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479; Griffin v. Colver, 16 N. Y. 489, 69 Am. Dec. 718; Landsberger v. Magnetic Telegraph Co., 32 Barb. 530; Leonard v. Telegraph Co., 41 N. Y. 544, 1 Am. St. Rep. 446; Baldwin v. Telegraph Co., 45 N. Y. 744, 6 Am. Rep. 165; Lowery v. Western Union Telegraph Co., 60 N. Y. 198, 19 Am. Rep. 154; McColl v. Western Union Telegraph Co., 44 N. Y. Super. Ct. 487; Wheelock v. Postal Telegraph Cable Co., 197 Mass. 119, 126, 83 N. E. 313, 14 Ann. Cas. 188; Candee v. Western Union Telegraph Co., 34 Wis. 471, 17 Am. Rep. 452.

In Sanders v. Stuart, supra, the plaintiff intrusted defendant with a message in cipher, which was unintelligible to defendant, for transmission to America. The defendant negligently omitted to send the message, and as a consequence the plaintiff lost a sum of money. Lord Coleridge, C. J., in rendering the decision of the court, said:

"Upon the facts of this case we think that the rule in Hadley v. Baxendale applies, and that the damages recoverable are nominal only. It is not necessary to decide, and we do not give any opinion, how the case might be if the message, instead of being in language utterly unintelligible, had been conveyed in plain and intelligible words. It was conveyed in terms which, as far as the defendant was concerned, were simple nonsense."

Baldwin v. United States Telegraph Co., supra, declared the rule which has ever since been followed in this state in the following language:

"For all the purposes for which the plaintiffs desired the information, the message might as well have been in cipher or in an unknown tongue. It indicated nothing to put the defendant upon the alert or from which it could be inferred that any special or peculiar loss would ensue from a nondelivery of it. Whenever special or extraordinary damages, such as would not naturally or ordinarily follow a breach, have been awarded for the nonperformance of contracts, whether for the sale or carriage of goods, or for the delivery of messages by telegraph, it has been for the reason that the contracts have been made with reference to peculiar circumstances known to both, and the particular loss has been in the contemplation of both, at the time of making the contract, as a contingency that might follow the nonperformance. In other words, the damages given by way of indemnity have been the natural and necessary consequences of the breach of contract, in the minds of the parties, interpreting the contract in the light of the circumstances under which and the knowledge of the parties of the purposes for which, it was made, and when a special performance is intended by one party, but is not known to the other, such special performance will not be taken into account in the assessment of damages for the breach."

In 27 American & English Encyclopedia of Law, p. 1062, it is said:

"The rule is well established that where the message, as delivered for transmission, is in cipher and unintelligible except to the sender and addressee, and the company has no information otherwise as to its character or purport, nor of its importance and urgency, the party injured can recover nothing more than nominal damages."

[5] No question arises in this case as to whether the telegraph company can limit its liability as to its own negligence, whether ordinary or gross. There is no provision of the contract with the telegraph company which applies to the peculiar facts of this case, which prescribes any limitation of liability. Nor does the appellant claim that its liability is limited by contract. The authorities which discuss the question of gross negligence do so only to show that a telegraph company cannot limit its liability against its own gross negligence. The correctness of this proposition is unquestioned. As we view the matter, therefore, the discussion of the question of gross negligence has no application whatever to the question presented for determination.

Moreover, the evidence does not justify the conclusion that the defendant was guilty of gross negligence. The defendant made efforts to stop the message, and these efforts resulted in failure because of some mistake or error of an operator at some distant post from where the message was sent. Whether the operator who failed in the performance of his duty was the employé of the defendant, or the employé of a company owning some connecting line, does not appear. It does appear, however, that the defendant and the corporation which delivered the message in Brazil were separate and distinct corporations. Moreover, the complaint predicates the charge of negligence upon the unauthorized sending of the message, and not upon the failure to notify the plaintiffs that the message had been delivered. We are satisfied that the defendant failed to exercise due care to stop the message, but this fact alone would not sustain a finding that the defendant was guilty of gross negligence.

[6] We find no support in the evidence for the claim that the defendant knew that the cipher message related to a "business matter"; but, if the defendant might have inferred that such was the case, that circumstances alone would not acquaint the defendant with a knowledge of the nature of the message so as to make it liable for any special damages which resulted from the defendant's neglect. In Western Union Telegraph Co. v. Coggin, 68 Fed. 137, 15 C. C. A. 231, the plaintiff told the telegraph company that the message related to "a business matter," and the court, in discussing this feature of the case, said:

"The nature of the business was not disclosed. Whether it was of much or little moment, and whether it related to business of the past, present, or future, or to business which, if not transacted at a particular time or place, would be attended with pecuniary loss or damage, was not stated; nor was anything said from which such results can be said to have been within the contemplation of the parties."

While the facts proved established a cause of action in the plaintiffs against the defendant, the circumstances of the case were such that, under well-established rules, no more than nominal damages could be recovered.

Judgment modified by reducing the judgment to nominal damages, and as modified affirmed, with costs to the appellant.

GERARD, J., concurs.

GUY, J. I am constrained to dissent from the opinion of my learned colleagues for the following reasons:

This action is not an action upon contract, nor an action in tort growing out of contract, but is an action in tort for damages resulting from the gross negligence of the defendant in sending an unauthorized telegraph message to an addressee in Brazil, purporting to have been sent by the plaintiffs, the sending and delivery of which, at the time it was sent, was in direct disregard of specific notice given by the plaintiffs to the defendant that the message must not be transmitted or delivered. The rule therefore that, for a failure to exercise reasonable care in the authorized sending and delivery of a cipher message, the company is only liable for nominal damages, whether the action be brought on the contract or in tort, unless the defendant had notice of the meaning and importance of the message, is not applicable. The tort in such cases grows out of the contract, and the damage is measured by what was in contemplation of the parties making the contract. In this case there is no contract. The evidence shows that, so far as the original message delivered by plaintiffs to defendant was concerned, it had been withdrawn, and the contract for its transmission and delivery, as between the plaintiffs and defendant, had, by mutual consent, been canceled; the plaintiffs having notified the company not to deliver the message, the company having consented to stop the delivery thereof, and having subsequently notified the plaintiffs that the message had been stopped.

The suggestion that there was a new contract made to stop delivery,

and that this action is for negligence in performing that contract, is without merit. The appellant denies the making of any such new contract. There is no evidence that it was the intent of the parties to make any charge therefor, on the one hand, or to make any payment therefor, on the other. Nor is there any evidence to support the contention that the message was delivered by the mistake of some distant agent of a connecting line. The only evidence on this point is defendant's letter subsequently written to plaintiffs, which justifies the inference that the wrongful transmission and delivery of the message was due to the gross negligence of defendant's authorized agents in its home office, acting within the scope of their authority.

"Whether it be in contract or in tort, the proper measure of damages, except where punitive damages are allowable, is a just indemnity to the party injured for the loss which is the natural, reasonable, and proximate result of the wrongful act complained of, and which a proper degree of prudence on the part of the complainant would not have averted." Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507, Rapallo, J., writing the opinion.

This rule, of course, is subject to the modification that, in actions on contract, the damage is further measured by what was expressly or impliedly within the contemplation of the parties.

"The general rule in actions for torts is that the wrongdoer is liable for all injuries resulting directly from the wrongful acts, whether they could or could not have been foreseen by him." 13 Cyc. 28, citing Ehten v. Luyster, 60 N. Y. 252.

It is urged that the message was not signed with the name of the plaintiffs; but defendant had knowledge that the sending of a message in the form of the message in question would be construed by the addressee as a message sent by the plaintiffs.

In Elwood v. W. U. T. Co., 45 N. Y. 549, 556 (6 Am. Rep. 140), a telegraph message was sent in the name of the cashier of a bank at the request of a party who was thereby held out as entitled to credit for a large amount, without any evidence of his authority to use the name of the cashier. In affirming a judgment in favor of the plaintiff therein, the court (Rapallo, J., writing the opinion) say:

"That the sending of such a message in the name of the cashier of a bank, at the request of the party who was thereby held out as entitled to credit for a large amount, without any evidence of his authority to use the name of the cashier, * * * was an act of gross negligence, is too clear to admit of argument. The act was done in the direct course of the employment of the agent. The agent was placed in the office, and in the control of the instruments, to use them in transmitting messages for a compensation. *If the agent performed that duty in a negligent manner, whereby the plaintiff was injured, the principal is clearly liable.*"

In the case at bar the defendant had actual knowledge that the message was unauthorized, so that there is here no question of the exercise of reasonable care to discover whether the message was authorized, but a flagrant neglect of duty resulting in damage to the plaintiffs. The utter failure on the part of the defendant to notify plaintiffs of the wrongful sending of the message, after it had been withdrawn by plaintiffs, and its delivery stopped, constituted further negligence of the grossest character, for which defendant would be liable. See 37

Cyc. 1673, citing Laudie v. W. U. Telegraph Co., 126 N. C. 431, 35 S. E. 810, 78 Am. St. Rep. 668.

While it would seem that, where the action is based upon a gratuitous, independent tort, the defendant's liability for all the direct consequences thereof would be the same, whatever the degree of negligence, some of our courts have directly held, and others strongly intimated, that a greater degree of liability would follow where the negligence is gross. From the very nature of the business, few instances arise of gross negligence on the part of a telegraph company, and there does not seem to be any reported case analagous with the case at bar.

But it is well settled by numerous recent authorities in this state that a telegraph company, as a quasi public corporation, cannot, *even by express contract,* limit its liability where gross negligence is shown, such as an absolute failure to perform its duty or to exercise any degree of care,, manifesting utter recklessness as to consequences.

In Postal Telegraph Cable Co. v. Robertson, 36 Misc. Rep. 785, 74 N. Y. Supp. 876, the court say:

"The rule is that a telegraph company may, by contract, limit its liability for mistakes or delays in the transmission and delivery, or nondelivery, of messages, caused by negligence of its servants, if the negligence is not gross; * * * but such company cannot by notice limit its liability in this respect, by any form of contract, when its negligence is gross or its conduct willful."

This statement of the rule has been cited with approval in Will v. Postal Telegraph Cable Co., 3 App. Div. 22, 37 N. Y. Supp. 933; Dixon v. W. U. Telegraph Co., 3 App. Div. 61–64, 38 N. Y. Supp. 1056; Empire Roller Rink Co. v. W. U. Telegraph Co., 75 Misc. Rep. 567–568, 133 N. Y. Supp. 717; Weld v. Postal Telegraph Cable Co., 199 N. Y. 88, 92 N. E. 415.

In Weld v. Postal Telegraph-Cable Co., 199 N. Y. 88, 92 N. E. 415, the court say:

"It is therefore but right that telegraph companies should have the power to limit their liability in cases where mistakes occur through no fault on their part, or for such mistakes of their employés as will occur through ordinary negligence in spite of the most stringent regulations or the most vigilant general oversight. *But manifestly this power cannot be extended without placing the public absolutely at the mercy of those engaged in transmitting telegraph messages.* This is the reason of the rule, long since established in this state, that individuals and corporations engaged in this quasi public business cannot contract to absolve themselves from liability for their own willful misconduct or gross negligence. They may protect themselves by contractual limitations, *but beyond that they may not go.*"

In this case it is conceded by both sides that there is no clause in the original contract, which, if it were still existent, would bring the parties within the rule permitting telegraph companies to limit their liability by express contract.

An absolute failure to perform a duty, or an utter disregard of an express injunction not to transmit or deliver a message, is a conscious disregard of consequences and constitutes gross negligence. See Elwood v. W. U. Telegraph Co., supra; 37 Cyc. 1673; Rrailroad Co. v.

Lockwood, 84 U. S. (17 Wall.) 376–382, 21 L. Ed. 627; Kiley v. West. Union Telegraph Co., 109 N. Y. 231, 16 N. E. 75; Western Union Telegraph Co. v. Way, 83 Ala. 543, 4 South. 844.

It is true that the authorities cited hold only that a telegraph company cannot, by express contract, relieve itself of full liability for gross negligence; but as such decisions are based upon the broad principle that it would be against public policy and manifestly unjust to permit a quasi public corporation, for any reason whatever, to avoid such liability, it must be assumed that the rule of law invoked by the appellant herein is an established rule of law only as to cases where only ordinary negligence is established, and is not a rule of law as to cases involving gross negligence.

The contention that quasi public corporations, though denied the right, by one well-established rule of law, to limit their liability for gross negligence, even by express contract, shall be permitted to accomplish the same result by invoking another rule of law applicable only where ordinary negligence is involved, even though the courts have everywhere declared that to permit such freedom from liability is against public policy and "cannot be extended without placing the public absolutely at the mercy of those engaged in transmitting telegraph messages," is not worthy of serious discussion. What the law forbids by direct action, it surely will not permit by indirection.

A rule of law is not an arbitrary thing, like a statute, but must be founded in good reason and justice. Where the reason no longer exists, or where it would be manifestly unjust or against public policy to apply such a rule, the rule is deemed not to exist. See Fitzwater v. Warren, 206 N. Y. 355–358, 99 N. E. 1042.

In this case, gross negligence has been established, taking the case out of the rule. But, irrespective of the distinction which may be drawn between cases of ordinary negligence and gross negligence on the part of quasi public corporations, this case does not come within the rule invoked by the appellant, for the reason that the contract had ceased to exist, and the unauthorized sending and delivery of the message constituted an independent, gratuitous tort, which would render the defendant liable for all the direct and proximate damages resulting therefrom.

The judgment should be affirmed, with costs to the respondents.