KERR STEAMSHIP Co., INC., Respondent, *v.* RADIO CORPORATION OF AMERICA, Appellant.

Transportation corporations — telegrams — negligence — damages — liability of radio company for neglect to transmit cipher message — measure of damages amount of tolls paid — notice of risk must be given to lay basis for special damages — damages recoverable for breach of the contract the measure of amount recoverable for the breach of duty.

1. Where the terms of a telegram disclose the general nature of the transaction which is the subject of the message, the company is answerable for the natural consequences of its neglect in relation to the transaction thus known or foreseen. On the other hand, where the terms of the message give no hint of the nature of the transaction, the liability is for nominal damages or for the cost of carriage if the tolls have been prepaid. In an action, therefore, to recover damages sustained through the failure to transmit and deliver in a foreign country a cipher message unintelligible on its face, the limit of recovery is the amount of the tolls paid. (*Hadley* v. *Baxendale*, 9 Exch. 341, followed.)

2. A contention that the transaction has been revealed within the meaning of the rule if the length and cost of the telegram or the names of the parties would fairly suggest to a reasonable man that business of moment is the subject of the message, cannot be sustained. Notice of the business, if it is to lay the basis for special damages, must be sufficiently informing to be notice of the risk.

3. Nor may an argument be upheld, that the action is one in tort for the breach of a duty owing from a public service corporation, and that the rule does not protect the carrier unless sued upon the contract. Though the duty to serve may be antecedent to the contract, yet the contract when made defines and circumscribes the duty, and the damages recoverable for non-performance of the contract are the damages recoverable for non-performance of the duty.

*Kerr Steamship Co.* v. *Radio Corporation,* 216 App. Div. 839, reversed.

(Argued May 10, 1927; decided May 31, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 7, 1926, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

*Peter F. McAllister* and *Vincent R. Impellitteri* for appellant. The message in question being in code and defendant having no knowledge or notice that failure to deliver would result in special damage to plaintiff, defendant would not be liable in any event for more than nominal damages. (*Hadley* v. *Baxendale,* 9 Exch. 341; *Baldwin* v. *U. S. Telegraph Co.,* 45 N. Y. 744; *Hart* v. *Direct United States Cable Co.,* 86 N. Y. 633; *Bertuch* v. *U. S. & Haiti Tel. & Cable Co.,* 79 Misc. Rep. 10; *McColl* v. *Western Union Tel. Co.,* 44 N. Y. Super. Ct. 487; *Taggart* v. *Western Union Tel. Co.,* 198 App. Div. 368; *Primrose* v. *Western Union Tel. Co.,* 154 U. S. 1; *Wheelock* v. *Postal Tel. Cable Co.,* 197 Mass. 119; *Western Union Tel. Co.* v. *Coggin,* 68 Fed. Rep. 137.) The trial court erred in refusing to recognize any distinction between gross and simple negligence, since the unrepeated message stipulation is binding on the sender of a message in the absence of gross negligence. (*Halstead* v. *Postal Tel. Cable Co.,* 193 N. Y. 293; *Weld* v. *Postal Tel. Cable Co.,* 210 N. Y. 59; *Dalton* v. *Hamilton Hotel Operating Co.,* 242 N. Y. 481.)

*Elkan Turk, Benjamin Wiener* and *Herman Goldman* for respondent. Appellant is not relieved from full lia-

bility for respondent's loss by reason of the circumstance that the message was sent in part as a code message and as an unrepeated message even disregarding the element of gross negligence. (*Landsberger* v. *Magnetic Tel. Co.*, 32 Barb. 530; *Taggart* v. *Western Union*, 198 App. Div. 360.) Appellant had ample notice of the purport and importance of the message. (*Rittenhouse* v. *Independent Line of Telegraph*, 44 N. Y. 263; *Leonard* v. *New York, etc., Tel. Co.*, 41 N. Y. 544; *Hoye* v. *Pennsylvania R. R. Co.*, 114 App. Div. 821; *Pearsall* v. *Western Union Tel. Co.*, 124 N. Y. 256; *U. S. Tel. Co.* v. *Wenger*, 55 Penn. St. 266; *Parks* v. *Alta, etc., Tel. Co.*, 13 Cal. 422; *Mowry* v. *Western Union Tel. Co.*, 51 Hun, 126; Jones on Telegraph & Telephone Companies [2d ed.], § 542; *Bryant* v. *American Tel. Co.*, 1 Daly, 576; *Sprague* v. *Western Union*, 6 Daly, 200; *Western Union* v. *Blackwell*, 24 Okla. 535; *Marriott* v. *Western Union*, 84 Neb. 443; *Postal Tel. Co.* v. *Louisville*, 136 Ky. 843.) The action in the case at bar sounding in tort, the rule of *Hadley* v. *Baxendale* cannot in any event have application. (*Western Union Tel. Co.* v. *Lawson*, 182 Fed. Rep. 369; *Ehrgott* v. *The Mayor*, 96 N. Y. 264; *Putnam* v. *Broadway, etc., R. R. Co.*, 55 N. Y. 108; *Tice* v. *Munn*, 94 N. Y. 621; *Coy* v. *Indianapolis Gas Co.*, 146 Ind. 655; *Hill* v. *Winsor*, 118 Mass. 251; *Stewart* v. *City of Ripon*, 38 Wis. 584; *Baltimore, etc., R. W. Co.* v. *Kemp*, 61 Md. 74.)

Cardozo, Ch. J. On May 15, 1922, the plaintiff, Kerr Steamship Company, Inc., delivered to defendant, the Radio Corporation of America, a telegram consisting of twenty-nine words in cipher to be transmitted to Manila, Philippine Islands.

The telegram was written on one of the defendant's blanks, and is prefaced by the printed words: " Send the following radiogram via R. C. A., subject to terms on back hereof which are hereby agreed to."

The defendant had no direct circuit for the transmission of radiograms to the Philippine Islands. A radiogram

could have been sent to London, where by transfer to other companies it might have reached its destination. This was expensive for the customer. To reduce the expense and follow a more direct route, the defendant forwarded its Philippine messages over the line of the Commercial Cable Company, which transmitted them by cable. When messages were thus forwarded, the practice was to send them upstairs to be copied. One copy was then handed to the cable company, and one kept for the defendant's files. That practice was followed in this instance except that the copy intended for the cable company was mislaid and not delivered. As a consequence the telegram was never sent.

The telegram on its face is an unintelligible cipher. It is written in Scott's code. Translated into English, it remains at best obscure, though some inkling of the transaction may be conveyed to an ingenious mind. Untranslated, it is jargon. The fact is that one Macondray, to whom the telegram was addressed, had cabled the plaintiff for instructions as to the loading of a ship, *The Blossom.* The instructions were contained in the undelivered message. As a result of the failure to transmit them, the cargo was not laden and the freight was lost. The trial judge directed a verdict for $6,675.29, the freight that would have been earned if the message had been carried. He held that the cipher, though the defendant could not read it, must have been understood as having relation to some transaction of a business nature and that from this understanding without more there ensued a liability for the damages that would have been recognized as natural if the transaction had been known. The defendant insists that the tolls which the plaintiff was to pay, $26.78, must be the limit of recovery.

The settled doctrine of this court confines the liability of a telegraph company for failure to transmit a message within the limits of the rule in *Hadley* v. *Baxendale* (9 Exch. 341). Where the terms of the telegram disclose

the general nature of the transaction which is the subject of the message, the company is answerable for the natural consequences of its neglect in relation to the transaction thus known or foreseen (*Leonard* v. *N. Y. Tel. Co.*, 41 N. Y. 544; *Rittenhouse* v. *Ind. Line of Telegraph*, 44 N. Y. 263). On the other hand, where the terms of the message give no hint of the nature of the transaction, the liability is for nominal damages or for the cost of carriage if the tolls have been prepaid (*Baldwin* v. *U. S. Tel. Co.*, 45 N. Y. 744). This is in accord with authority elsewhere (*Primrose* v. *W. U. Tel. Co.*, 154 U. S. 1, 29; *Wheelock* v. *Postal Tel. Cable Co.*, 197 Mass. 119; *Sanders* v. *Stuart*, L. R. 1 C. P. 326; 3 Sutherland on Damages, § 959).

We are now asked to hold that the transaction has been revealed within the meaning of the rule if the length and cost of the telegram or the names of the parties would fairly suggest to a reasonable man that business of moment is the subject of the message. This is very nearly to annihilate the rule in the guise of an exception. The defendant upon receiving from a steamship company a long telegram in cipher to be transmitted to Manila would naturally infer that the message had relation to business of some sort. Beyond that, it could infer nothing. The message might relate to the loading of a cargo, but equally it might relate to the sale of a vessel or to the employment of an agent or to any one of myriad transactions as divergent as the poles. Notice of the business, if it is to lay the basis for special damages, must be sufficiently informing to be notice of the risk (*Primrose* v. *W. U. Tel. Co.*, *supra; Tel. Co.* v. *Sullivan*, 82 Ohio St. 14; 3 Sutherland on Damages, §§ 959, 970).

At the root of the problem is the distinction between general and special damage as it has been developed in our law. There is need to keep in mind that the distinction is not absolute, but relative. To put it in other words, damage which is general in relation to a contract of one kind may be classified as special in relation to

another. If A and B contract for the sale of staple goods, the general damage upon a breach is the difference between the market value and the price. But if A delivers to X a telegram to B in cipher with reference to the same sale, or a letter in a sealed envelope, the general damage upon the default of X is the cost of carriage and no more. As to him the difference between price and value is damage to be ranked as special, and, therefore, not recoverable unless the message is disclosed. The argument for a larger liability loses sight of this distinction. It misses a sure foothold in that it shifts from general damage in one relation to general damage in another. The bearer of a message who infers from the surrounding circumstances that what he bears has relation to business of some kind, is liable, we are told, for any damages that are natural with reference to the character of the business as to which knowledge is imputed. When we ask, however, to what extent the character of the business will be the subject of imputed knowledge, we are told that it is so much of the business only as will make the damage natural (cf. *W. U. Tel. Co.* v. *Way*, 83 Ala. 542, 557, 558; *Daugherty* v. *Am. Union Tel. Co.*, 75 Ala. 168). Thus we travel in a circle, what is natural or general being adapted to so much of a putative business as is constructively known, and what is constructively known being adapted to what is general and natural. One cannot build conclusions upon foundations so unstable. The loss of a cipher message to load a vessel in the Philippines may mean to one the loss of freight, to another an idle factory, to another a frustrated bargain for the sale or leasing of the cargo. We cannot say what ventures are collateral till we know the ventures that are primary. Not till we learn the profits that are direct can we know which ones are secondary. There is a *contradictio in adjecto* when we speak of the general damages appropriate to an indeterminate transaction.

The key to *Hadley* v. *Baxendale* is lost if we fail to keep in mind the relativity of causation as a concept of the law (McLaughlin, Proximate Cause, 39 Harv. L. R. 149; Edgerton, Legal Cause, 72 U. of Pa. L. R. 211, 343; Bohlen, Studies in the Law of Torts, p. 503; Haldane, The Reign of Relativity, pp. 125, 126). The argument for the plaintiff mistakenly assumes that the test of what is general damage in a controversy between the sender of a message and the receiver is also the test between the sender and the carrier. To unify the two relations is to abandon *Hadley* v. *Baxendale* in its application to contracts for the transmission of a message. If knowledge that a message is concerned with business of some kind is by imputation knowledge of those forms of business, and those only, that are typical or normal, there must be search for a definition of the normal and the typical. The quest is obviously futile. Every effect is natural when there is complete knowledge of the cause (Haldane, *supra*). Every damage becomes natural when the transaction out of which it arises has been fully comprehended. Imputed knowledge cannot stop with imputed notice of transactions that are standardized by usage. In the complexities of modern life, one does not know where the ordinary ends and the extraordinary begins. Imputed knowledge, if it exists, must rest upon an assumption less timid and uncertain. The assumption cannot be less than this, that whatever a carrier could ascertain by diligent inquiry as to the nature of the undisclosed transaction, this he should be deemed to have ascertained, and charged with damages accordingly. We do not need to consider whether such a rule might wisely have been applied in the beginning, when the law as to carriers of messages was yet in its infancy. Most certainly it is not the rule announced in our decisions. We cannot accept it now without throwing overboard the doctrine that notice is essential. Notice may indeed be adequate though the transaction is indicated in outline only (3

Sutherland on Damages, § 970, and cases cited; cf. *Bailey & Co.* v. *W. U. Tel. Co.*, 227 Penn. St. 522; *Milling Co.* v. *Postal Tel. Co.*, 101 Kan. 307; *Leonard* v. *N. Y. Tel. Co.*, 41 N. Y. 544). The carrier must draw such reasonable inferences in respect of the character of the business as would be drawn by men of affairs from condensed or abbreviated dispatches. Something, however, there must be to give warning that the subject of the message is not merely business in general, but business of a known order (Sutherland on Damages, § 959).

We are not unmindful of the force of the plaintiff's assault upon the rule in *Hadley* v. *Baxendale* in its application to the relation between telegraph carrier and customer. The truth seems to be that neither the clerk who receives the message over the counter nor the operator who transmits it nor any other employee gives or is expected to give any thought to the sense of what he is receiving or transmitting. This imparts to the whole doctrine as to the need for notice an air of unreality. The doctrine, however, has prevailed for years so many that it is tantamount to a rule of property. The companies have regulated their rates upon the basis of its continuance. They have omitted precautions that they might have thought it necessary to adopt if the hazard of the business was to be indefinitely increased. Nor is the doctrine without other foundation in utility and justice. Much may be said in favor of the social policy of a rule whereby the companies have been relieved of liabilities that might otherwise be crushing. The sender can protect himself by insurance in one form or another if the risk of non-delivery or error appears to be too great. The total burden is not heavy since it is distributed among many, and can be proportioned in any instance to the loss likely to ensue. The company, if it takes out insurance for itself, can do no more than guess at the loss to be avoided. To pay for this unknown risk, it will be driven to increase

the rates payable by all, though the increase is likely to result in the protection of a few. We are not concerned to balance the considerations of policy that give support to the existing rule against others that weigh against it. Enough for present purposes that there are weights in either scale. Telegraph companies in interstate and foreign commerce are subject to the power of Congress (36 Stat. 539, 544). If the rule of damages long recognized by State and Federal decision is to give way to another, the change should come through legislation.

The plaintiff makes the point that the action is one in tort for the breach of a duty owing from a public service corporation, and that the rule of *Hadley* v. *Baxendale* does not protect the carrier unless sued upon the contract. There is much authority the other way (*Primrose* v. *W. U. Tel. Co.*, 154 U. S. 1; *W. U. Tel. Co.* v. *Hall*, 287 Fed. Rep. 297; *Bertuch* v. *U. S. & Hayti Tel. Co.*, 79 Misc. Rep. 10, 15; *Fitch* v. *Tel. Co.*, 150 Mo. App. 149; *W. U. Tel. Co.* v. *Hogue*, 79 Ark. 33; *Newsome* v. *W. U. Tel. Co.*, 153 N. C. 153; cf. 3 Hutchinson on Carriers, §§ 1360, 1367, 1368, 1370). Though the duty to serve may be antecedent to the contract, yet the contract when made defines and circumscribes the duty (*Gardner* v. *W. U. Tel. Co.*, 231 Fed. Rep. 405; 243 U. S. 644; *W. U. Tel. Co.* v. *Czizek*, 264 U. S. 281, 284). Possibly the existing rule of damage would have been rejected at the beginning if the carrier's default had been dissociated from the law of contracts, and considered as a tort (cf. Bohlen, Studies in the Law of Torts, p. 87; *Ehrgott* v. *Mayor*, 96 N. Y. 264, 281; *Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 54; *W. U. Tel. Co.* v. *Lawson*, 182 Fed. Rep. 369). As it is, there is little trace of a disposition to make the measure of the liability dependent on the form of action. A different question would be here if the plaintiff were seeking reparation for a wrong unrelated to the contract, as *e. g.*, for a refusal to accept a message or for an insistence upon the payment of dis-

criminatory rates.   The plaintiff alleges in the complaint that the defendant did accept the message and " promised and agreed " to transmit it, and that the plaintiff has " duly performed each and every condition of the agreement " on its part to be performed, and is willing to pay the charges.   We do not stop to inquire whether such a complaint is turned into one in tort by the later allegation that the defendant was negligent in the performance of its promise (*W. U. Tel. Co.* v. *Rowell*, 153 Ala. 295, 310; *Austin* v. *Rawdon*, 44 N. Y. 63; *Vilmar* v. *Schall*, 61 N. Y. 564, 568).   Upon the acceptance of the message the defendant's duty was to deliver it in accordance with the contract, and the damages recoverable for non-performance of the contract are the damages recoverable for non-performance of the duty (cf. *Webber* v. *Herkimer R. R. Co.*, 109 N. Y. 311; *Carroll* v. *Staten Island R. R. Co.*, 58 N. Y. 126, 134, 135).

The conclusion thus reached makes it unnecessary to consider whether a limitation of liability has been effected by agreement.   On the back of the message is the warning, " to guard against mistakes, the sender of every message should order it repeated," followed by these words:   " It is agreed between the sender of the message on the face hereof and this company, that said company shall not be liable for mistakes or delays in transmission or delivery, nor for non-delivery to the next connecting telegraph company or to the addressee, of any unrepeated message, beyond the amount of that portion of the tolls which shall accrue to this company; and that this company shall not be liable for mistakes or delays in the transmission or delivery, nor for delay or non-delivery to the next connecting telegraph company, or to the addressee, of any repeated message beyond the usual tolls and extra sum received by this company from the sender for transmitting and repeating such message; and that this company shall not be liable in any case for delays arising from interruption in the

working of its system, nor for errors in cipher or obscure messages."

The plaintiff argues that this provision is inapplicable where the telegraph company has omitted to transmit the telegram at all, and moreover that it is unreasonable and oppressive in the limitation affixed to liability where the message is repeated. We leave these questions open (cf. *Sprague* v. *W. U. Tel. Co.*, 6 Daly, 200; affd., on opinion below, 67 N. Y. 590; *W. U. Tel. Co.* v. *Czizek*, 264 U. S. 281; *Postal Tel. Co.* v. *Dickerson*, 254 U. S. 609, reversing 114 Miss. 115; *Kilthau* v. *Int. Merc. Marine Co.*, 245 N. Y. 361; *W. U. Tel. Co.* v. *Esteve Bros. & Co.*, 256 U. S. 566, 574, 575).

The judgment of the Appellate Division and that of the Trial Term should be reversed, and judgment directed in favor of plaintiff for $26.78, to be offset against costs in all courts, which are awarded to defendant.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.