[Civil No. 3081. Filed January 12, 1932.]

[6 Pac. (2d) 895.]

W. L. SHARP, Appellant, v. WESTERN UNION TELEGRAPH COMPANY, a Corporation, Appellee.

Messrs. McNabb & De Camp, for Appellant.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld and Mr. Francis R. Stark, for Appellee.

ROSS, J.—This is an action by W. L. Sharp against the Western Union Telegraph Company for damages he claims to have sustained by reason of the latter's failure to transmit and deliver to him at Oklahoma City, Oklahoma, a sum of money deposited with it at Phoenix, Arizona, for such purpose.

Defendant pleaded to the complaint by way of general demurrer and general denial.

At the oncoming of the trial, and after a jury was impaneled, defendant admitted liability for nominal damages, objected to the introduction of any evidence, and moved for a directed verdict in favor of plaintiff for nominal damages, on the ground that under the pleadings plaintiff was entitled to such damages only. Defendant's motion was granted, and the jury was instructed to return a verdict for plaintiff for nominal damages in the sum of one dollar. This was done, whereupon judgment was duly entered upon such verdict.

Plaintiff has appealed, assigning as error the action of the court in granting defendant's motion. Whether plaintiff has been denied his rights or not depends upon the allegations of his complaint. Therein he alleges, in substance: That he was, on or about May 13, 1930, in Oklahoma City, Oklahoma, and, by unfortunate circumstances, without money; that he was on his way home to Phoenix, traveling in a Packard sedan, and to make the trip with his family was compelled to wire his friend J. T. Williams, of Phoenix, for money; that in response to his wire said Williams on May 14th did wire to him at defendant's main office in Oklahoma City "the sum of $35.00 less $1.32 charges for transmitting said money order"; that each day thereafter he called at defendant's office and inquired if money had been wired him by Williams, and that on each occasion he was falsely informed there had been no

money wired to him by anyone; that defendant on May 19th, notwithstanding plaintiff had been calling for said money each day, returned the same to said Williams "less the charges"; that he was a stranger in said Oklahoma City with his family; that his Packard sedan was worth $900, and that, in order to obtain means of transportation to his home, he was compelled to trade his said Packard sedan for an old car not worth $50 and $80 cash, and that, as a result of defendant's failure to deliver to him the money wired by Williams, he was damaged in the sum of $795, being the difference between the salvaging of the old car and the $80 received in trade and the value of his Packard. His prayer was for the sum of $795 and costs. In effect, the judgment for nominal damages was one upon the pleadings, and should not have been directed if under any reasonable construction of the complaint plaintiff showed himself entitled to actual damages. Defendant's motion admitted the facts stated in the complaint to be true, and that plaintiff's rights had been violated.

That defendant failed to perform its obligation to plaintiff is too patent for argument. Its neglect was inexcusable. Defendant had accepted, in accordance with its standing invitation, money from plaintiff's friend, and agreed to transmit and deliver the same to plaintiff at Oklahoma City safely and as expeditiously as its facilities would permit, and in total disregard of its promise failed to give the money to plaintiff, although repeatedly asked to do so. Defendant should be made to pay plaintiff the damages proximately resulting from such carelessness and negligence. 26 R. C. L. 561, § 66.

The damage claimed in his complaint is the difference between the value of his Packard sedan and what he realized for it in trade, or $795. He alleges he was compelled to make this trade in

order to transport himself and family to his home in Phoenix.

The question is as to whether the damages suffered under such circumstances are proximately traceable to defendant's dereliction, and whether they were within the contemplation of the parties at the time of making the contract.

The general rule of damages for failure to meet an obligation to pay money according to agreement is the addition of interest to the principal, and that this rule applies to agreements of telegraph companies to transmit money is recognized by this court in *Morris* v. *Western Union Tel. Co.*, 24 Ariz. 12, 206 Pac. 580. But we held the facts in that case took it out of the general rule because the plaintiff alleged in his complaint (and it was decided upon the sufficiency of the complaint) "that at the time the money was agreed to be sent the defendant was fully informed that the plaintiff was in Eureka, Kansas, wholly without funds, and was expecting the money, and that he was suffering hardship, embarrassments, mental anguish, and physical pain."

It appearing the telegraph company knew of plaintiff's circumstances, we held its failure to deliver the money to him made it liable for damages proximately caused by such neglect. This ruling, so far as damages for mental and physical pain and suffering are concerned, is expressly based upon the fact that the telegraph company had notice at the time of making the contract of Morris' special circumstances. We there quoted a statement of the rule from *Smith* v. *Western Union Tel. Co.*, 150 Pa. 561, 24 Atl. 1049, as follows:

" 'It is true that in an action for the breach of a contract to pay money for a special object which was known to the party agreeing to make the payment, damages directly and naturally resulting from the breach and therefore supposed to have been

in contemplation of the parties, may be given in addition to interest, but such damages must be shown by the evidence.' "

We deduced from such rule a liability in that case upon the ground that the defendant was informed at the time of making the contract of the special circumstances surrounding the sendee of the message.

The complaint here alleges no fact showing defendant knew plaintiff's circumstances at the time of making the contract. True, he alleges he was without money, and that his family was with him, and that he was compelled to get money to transport himself and family to Phoenix, but there is no allegation that defendant knew these things at the time of making the contract, or subsequently, or at all.

For a breach of its duty to transmit and pay money to plaintiff as agreed, plaintiff is entitled to such damages as naturally arose from the breach, or such as might reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of such breach. 17 C. J. 742, § 46. This is the rule whether the action be one for breach of contract or one sounding in tort. "Though the duty to serve may be antecedent to the contract, yet the contract when made defines and circumscribes the duty." *Kerr S. S. Co.* v. *Radio Corp.,* 245 N. Y. 284, 55 A. L. R. 1139, 157 N. E. 140. It can hardly be said that what plaintiff did upon failure to receive the money was the natural result of such disappointment. On the contrary, it was, rather, the unexpected. Men do not naturally or generally sacrifice their property. Sometimes they may do so to obtain immediate relief from a temporary embarrassment. The general rule, however, is for men to insist upon *quid pro quo* in business transactions. The defendant was in possession of no information to cause

it to expect plaintiff would trade a $900 automobile for $80 cash and a $50 automobile. Under the showing, defendant did not know plaintiff was in distress for money or that he was among strangers. From the showing made, this is the ordinary case of default in paying money, and the rule in such case limits the damages to a repayment of the money, the charge of transmission, and interest. 17 C. J. 746, § 77; 37 Cyc. 1775.

But, if the complaint showed defendant was informed of plaintiff's circumstances at the time of making the contract, there arises the further question as to whether the damage claimed was proximately caused by the negligence of defendant in failing to deliver money to plaintiff. That plaintiff resorted to the sale of his automobile to raise money to go home is not conclusive that defendant's neglect proximately caused him to do it. Rather, a more potent reason for his adopting this method of obtaining money was doubtless his inability to raise it in any other way. Such inability was the real cause of his sacrificing his automobile. He found himself in the position that men frequently find themselves because their creditors have failed them: forced into a situation where they must sacrifice their property to meet some pressing need. It would not for a moment be contended, we apprehend, that a person with ample means or resources could, under like circumstances, sell a $900 automobile for $105 and recover the balance of the defendant. While it may be true plaintiff would not have sold his automobile if defendant had performed its duty of delivering the money to him, it is also true he would not have sacrificed his property if he had been able to raise money in any other way. As is said in *Western Union Tel. Co.* v. *Schriver,* (C. C. A.) 141 Fed. 538, 4 L. R. A. (N. S.) 678:

"An injury is not actionable which would not have resulted from the act of negligence except for the interposition of an independent cause."

It is quite evident plaintiff's loss resulted by reason of circumstances for which defendant was not responsible, and, moreover, circumstances of which defendant had no knowledge or information, and certainly not in the contemplation of the parties. It seems to us that the decision in the Morris case, *supra,* is decisive of the questions here raised.

Plaintiff argues that he was at all events entitled to a judgment in actual damages for the sum of $1.32, charged for transmitting the money. This sum, according to the complaint, together with the principal sum, was paid to defendant by Williams, and, although the principal was returned to Williams, the charge of transmission was not. Defendant evidently owes that sum either to Williams or plaintiff, but plaintiff omitted it from his complaint as an item of damages. He alleged his damages, probably on the theory that was not privy to the contract, to be the difference between the value of his car and what he traded it for, and prayed judgment for that sum only. He says the prayer is not controlling, and that is ordinarily true, but, where the prayer follows the allegations of damages, the two together are the best evidence to the trial court of what relief is sought. If the actual damages now claimed were not practically equal to what was recovered, and we were satisfied from the complaint that it was owing plaintiff and not Williams, with whom the contract was made, we might be moved to remand the cause, with directions that judgment be modified to include the transmission charge of $1.32. But, since the difference is so small, it seems the judgment should be affirmed.

We think we should not close this opinion without some reference to appellant's briefs. Counsel therein,

by innuendo and insinuation, charge the trial court with ignoring the law and with favoritism. They also use language that impugns the honesty and fairness of opposing counsel. It is needless to say the record nowhere justifies such reflections. If, instead of such abuse, counsel had devoted their efforts to the elucidation of the facts and the law of the case, they might have been of real service to their client and the court. It should be understood that the purpose of briefs in this court is to aid us in determining what the law is and that we get no benefit whatever from counsel's excursions into the field of abuse.

The judgment of the lower court is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.