HENRY BOSTELMAN, Plaintiff, *v.* THE WESTERN UNION TELEGRAPH COMPANY, Defendant.

Supreme Court, Special Term, Broome County, October 30, 1942.

*Harry S. Travis* for plaintiff.

*Lee, Gallagher & Lee* (*Charles Gallagher* of counsel), for defendant.

DEYO, J.  This action arises out of the defendant's delay in delivering a telegraphic money order to the plaintiff's bank. The complaint alleges that due to this delay certain checks were dishonored and the plaintiff was "subjected to loss of business and expense."  Pursuant to a motion for that purpose, the plaintiff was ordered to furnish a bill of particulars which was to contain among other things, a statement of the type and kind of business alleged to have been lost, and an itemized statement of the expenses incurred.  Pursuant thereto, the plaintiff has furnished the bill of particulars wherein it is stated that the loss of business "consisted of dealers refusing to

accept checks and in doing so, plaintiff was deprived of business," and that the expenses consisted of $3.50 charged by the bank for the dishonored checks and $25 traveling expenses, in making good the checks. The defendant bases this motion on the grounds that such items of damage, except for the protest fees, are "illegal, irrelevant, immaterial and otherwise incompetent," and asks that the plaintiff be precluded from giving evidence relative thereto, or in the alternative, that the words, "loss of business" be expunged from the complaint.

Although there is a dearth of decided cases on the question, the general rule seems to be that a telegraph company employed to transmit money is liable for its nonfeasance or misfeasance for such actual damage as naturally and proximately results from its negligence, and which may be assumed to have been within the contemplation of the parties. (80 A. L. R. 300.)

As was said in *Western Union Telegraph Co.* v. *Hall* (287 Fed. Rep. 297, at p. 300), "In telegraph cases, as in other negligence cases, liability for negligence (which is not wanton, willful, or malicious) is confined to compensation for such losses and other injuries as should reasonably have been foreseen by an ordinarily prudent person as the natural and probable consequence of such negligence in the light of attending circumstances."

In the case at bar no written message accompanied the transmittal, nor did the plaintiff disclose to the defendant's agent the purpose for which the money was to be used, and the defendant argues by analogy to the telegraph message cases that the plaintiff is therefore limited to nominal damages. (*Kerr Steamship Co.* v. *Radio Corp.*, 245 N. Y. 284, 288.) However, in the instant case money was being sent to a bank, which seems to me in and by itself sufficient to raise a question of fact as to whether or not the defendant was thereby put on notice that the money was intended to meet some obligation. This is an entirely different situation from that which was presented in *Taggart* v. *Western Union Telegraph Co.* (198 App. Div. 366), where the money was being sent to the plaintiff himself at a Baltimore hotel. There is likewise a jury question as to whether or not the protested checks and the expense incurred thereby were the natural and probable consequences of the defendant's default. The allegations of the complaint, therefore, relative to the protested checks, the protest fees and the expenses as amplified by the bill of particulars, seem to me to adequately state a cause of action as to those items and sufficiently apprise the defendant of the claim made in these respects.

The allegation in the complaint that the plaintiff suffered "loss of business," is so vague and general that it is almost meaningless. The plaintiff has amplified this claim in the bill of particulars submitted by alleging that such loss consisted of "dealers refusing to accept checks." I assume that the plaintiff means thereby that dealers, being aware that the plaintiff's checks had not been honored, declined to deal with him in his business of buying and selling cattle. Inasmuch as the money was sent to a bank for the obvious purpose of establishing credit, it is conceivable that a jury might find that the absence of such credit prevented the plaintiff from engaging in business dealings with third parties, and that the resulting loss of business was within the contemplation of the parties. The method whereby such damage, if any, may be measured, is a question for the Trial Court and the defendant's argument thereon seems to me to be premature. In any event, I cannot at this time say, as a matter of law, that the plaintiff's claim in this regard is irrelevant or immaterial. However, the defendant is entitled to know the names of the individuals whom the plaintiff claims refused to accept his checks because of this absence of credit, and the details of how the plaintiff was damaged thereby. To what extent such evidence will be considered on the trial is an entirely different question, which I do not pass upon at this time.

The defendant's motion for an order precluding the plaintiff from giving evidence at the trial relative to any loss of business suffered by him by reason of the defendant's default, will be granted, in the event the plaintiff fails to serve a further bill of particulars, within ten days after the service of the order to be granted herein, specifying the names of the individuals who refused to accept plaintiff's checks and in what manner and to what extent the plaintiff was damaged thereby. In all other respects the defendant's motion is denied. No costs will be awarded.