OPINION OF THE COURT
Martin B. Stecher, J.
Defendant moves for partial summary judgment (CPLR 3211 [a] [7]; [c]) dismissing plaintiffs claims to the extent they seek recovery of consequential damages. Plaintiff cross-moves for summary judgment (CPLR 3212) for an alleged loss of profits in the sum of $458,500.
Plaintiff, as assignee of Bellmore Investments, Ltd., alleges causes of action sounding in negligence, breach of contract and strict liability; but in all three, plaintiff seeks consequential damages as a result of defendant’s alleged delay in transmitting a wire order for the transfer of money.
Although issue is not yet joined, most of the essential facts *805 are undisputed. Bellmore entered into an agreement with Intercare Management Services, Inc. (Intercare) granting Bell-more among other things, an option to acquire certain stock in Davidson Tisdale Mines. The option agreement allowed Intercare to terminate the agreement, thereby canceling all the outstanding stock options, in the event Bellmore failed to make any required payment on or before a specified date.
In order to exercise the options available only through July 14, 1983 and July 21, 1983, Bellmore requested, on July 8, 1983, that its bank, Union Chelsea National Bank (Chelsea), transfer by wire the sum of $91,500 to the New York branch of Barclay’s Bank International (Barclay’s) to be credited to the account of "Alexander P. Maillis/U.S. Dollar Client,” a customer at Barclay’s office in the Bahamas. The moneys were intended by Bellmore to be withdrawn from Maillis’ account and delivered to Intercare as payment for the stock no later than July 14, 1983.
Chelsea, however, having no direct or correspondent relationship with Barclay’s wired the funds on July 11 to defendant Morgan Guaranty, Barclay’s correspondent bank, via the Federal Reserve communication system, known as "Fedwire”, an electronic fund transfer system owned and operated by the Federal Reserve Bank of New York and available for use by bank members of the Federal Reserve Bank system.[1] Chelsea instructed defendant to credit the account of Barclay’s, Morgan Guaranty’s own customer for ultimate credit by Barclay’s to Maillis’ account. Defendant acknowledged receipt of the funds, and subsequently credited the amount to the account of Barclay’s at 4:18 p.m. on the same day, July 11,1983.
At 10:20 a.m. on July 14, 1983, defendant received an inquiry from Chelsea regarding the whereabouts of the funds since Barclay’s customer was claiming nonreceipt. By 1:00 p.m. that day, when Barclay’s employee Byrd telephoned defendant’s employee Selby, concerning the transaction, defendant had discovered that notwithstanding its credit of the funds to Barclay’s account on July 11, it had no record of having delivered instructions to Barclay’s to credit Maillis’ account. Such cable advice finally was sent to Barclay’s at 5:04 p.m., July 14, after the close of Barclay’s regular business hours. On July 15, 1983, Barclay’s credited the funds to the account of Maillis.
*806 Plaintiff alleges that due to defendant’s delay in issuing the credit advice, the funds required to exercise the option were unavailable on the July 14 deadline date; the option lapsed; and Bellmore lost $458,500 in profits. No other damages are claimed.
A bank’s failure to transfer funds as requested or in a reasonably prompt manner can result in direct or general damages (e.g., the loss of the funds themselves, the interest thereon and any fee paid for the failed transfer); or consequential or special damages, here, the profits alleged to have been lost with the loss of the option (Evra Corp. v Swiss Bank Corp., 673 F2d 951, 955, cert denied 459 US 1017; Kerr S. S. Co. v Radio Corp., 245 NY 284, 288-289, cert denied 275 US 557).
The question presented on this motion, assuming the facts alleged to be true, is whether plaintiff may be entitled to consequential damages, no direct damages being sought and no fee for transmittal having been paid to the defendant.
Under UCC article 4, a bank may not be held liable for consequential damages for its failure to exercise ordinary care in handling "an item”, unless the bank acted in bad faith (UCC 4-103 [5]; Whitehall Packing Co. v First Natl. City Bank, 55 AD2d 675). An "item” is an instrument for the payment of money even though it is not negotiable (UCC 4-104 [1] [g]). It has been held that "item” does not include an electronic fund transfer (Evra Corp. v Swiss Bank Corp., supra, at p 955; Delbrueck & Co. v Manufacturers Hanover Trust Co., 609 F2d 1047, 1051; see, Dunne, The Checkless Society and Articles 3 and 4, 24 Bus Law 127 [1968]; but see, Clarke, An Item is an Item is an Item: Article 4 of the U.C.C. and the Electronic Age, 25 Bus Law 109, 111-112 [1969]).[2] It may be argued that the broad language of UCC 4-104 (1) (g) can include electronic transfers as "items”, but even if this is so, plaintiff may not recover consequential damages inasmuch as it does not allege that defendant acted in bad faith.
Under common-law principles, consequential damages are not available whether the claim against defendant is characterized as one sounding in contract, tort, or strict liability.
*807 The rule of Hadley v Baxendale (9 Ex 341, 156 Eng Rep 145 [1854]) limits a defendant’s liability as a result of breach of contract to those damages within the contemplation of the parties at the time the contract was made (Kerr S. S. Co. v Radio Corp., supra).
Here, Chelsea contracted with defendant to transfer properly Bellmore’s funds to Barclay’s account for credit to the account of Maillis, Barclay’s customer. Although Bellmore was not in privity with defendant, it may be argued that it was a third-party beneficiary of that agreement (Lawrence v Fox, 20 NY 268; Goodman-Marks Assoc. v Westbury Post Assoc., 70 AD2d 145).
Plaintiff, however, does not allege that defendant was informed, at the time defendant entered into the agreement, of Bellmore’s purpose in sending the wire, or of the possibility that damages in an amount five times the wired amount would result if the transmittal was not completed before the close of business on July 14, 1983. Defendant was told only of the source and the destination of the amount transferred. Had defendant been apprised of the potential consequences of delayed notification, it might have used extraordinary care or charged a substantial fee or procured special insurance or other indemnification or any combination of the foregoing; or declined to handle the transfer entirely.
Under the facts of this and similar cases, including the knowledge of the purpose of the wired transfer and the time when the option would expire, plaintiff was clearly in the better position to avoid the consequences of either nondelivery of the funds or failure to notify Barclay’s of the account to be credited (Evra Corp. v Swiss Bank Corp., supra, pp 957, 958; Hadley v Baxendale, supra, p 354). Certainly, where the consequence of another’s negligence may be avoided by the plaintiff, he is duty bound to do so (cf. Spier v Barker, 35 NY2d 444).
Where the plaintiff — and only the plaintiff — knew how critical the time element was, prudence would have dictated inquiry prior to the last day, when provision could have been made for an alternative mode of delivery Kerr S. S. Co. v Radio Corp., supra, pp 291-292; but see, An Economic Approach to Hadley v Baxendale, 62 Neb L Rev 157 [1983]).
Notice of the consequential damages cannot be inferred from the circumstances of the electronic transfer. The mere fact that the moneys were transferred by wire did not place *808 defendant on notice that time was of the essence or that extraordinary consequences could occur if the transfer went awry (Evra Corp. v Swiss Bank Corp., supra, at p 956).
As for negligence, it requires a demonstration that the occurrence was not only foreseeable, but was reasonably foreseeable (Palsgraf v Long Is. R. R. Co., 248 NY 339). There is no such demonstration here. A loss of profits by Bellmore in an amount five times the sum transmitted was not reasonably foreseeable by defendant, in the absence of such information at the time of the transmission (Kerr S. S. Co. v Radio Corp., supra, p 292; see also, Primrose v Western Union Tel., 154 US 1; Western Union Tel. Co. v Hall, 124 US 444; Evra Corp. v Swiss Bank Corp., supra, pp 957, 958; see also, Restatement [Second] of Torts § 917 comment d).
Contrary to plaintiff’s argument, defendant did not become the insurer of the transaction when it agreed to handle the transmission for Chelsea, especially in light of the fact that it charged neither Chelsea nor Bellmore a fee. (Defendant’s compensation was in the form of credit balances maintained at Morgan Guaranty by Barclay’s.)
The fact that on July 14, the last day for exercise of the option, Chelsea’s employee, Byrd, is alleged to have told defendant’s employee, Selby, that Chelsea’s customer would lose a substantial sum of money if the ultimate transferee, Maillis, did not receive the transmitted funds by the close of business that day, does not alter the rule or its effect. Where the defendant’s obligation was limited at the time it accepted the obligation to transmit the funds, that obligation cannot be enlarged (or, stated differently, its contract cannot be altered or its duty increased) by the subsequent communication of the effect of delay.
Finally, consequential damages are not available to plaintiff under its third cause of action for "strict liability”. Although plaintiff seeks to analogize the principles of strict products liability to the instant case, defendant provided a service — not a product. To the degree that it attempts to allege a breach of implied warranty that defendant would not act negligently in the transmission of the funds, the claim fails to state a cause of action (see, Milau Assoc. v North Ave. Dev. Corp., 42 NY2d 482; Perlmutter v Beth David Hosp., 308 NY 100).
Moreover, plaintiff has failed to point to any regulation or statute which would impose strict liability upon the bank. The Electronic Fund Transfer Act (15 USC §§ 1693-1693r), which *809 provides a basic framework establishing the rights, liabilities and responsibilities of parties using electronic fund transfer systems, does not apply to interbank fund transfers (15 USC § 1693a; see also, 12 CFR 205.3 [b]). Furthermore, subpart B of regulation J, promulgated pursuant to sections 4, 13, 14, 16 and 19 of the Federal Reserve Act (12 USC §§ 248, 342, 464), requires a transferee bank, such as defendant "[t]o credit promptly the beneficiary’s account or otherwise make the amount available to the beneficiary” (12 CFR 210.30 [b] [1]). It does not impose a condition of strict compliance (12 CFR 210.30 [b] [2]), or liability for consequential damages. In any event, plaintiff does not dispute that defendant credited the funds to Barclay’s account within 28 minutes after they were received from Chelsea via Fedwire.
Accordingly, the defendant’s motion to dismiss plaintiffs claims to the extent that they seek recovery of consequential damages is granted. The plaintiffs cross motion for summary judgment is denied.

. Chelsea could not wire the funds directly to Barclay’s on Fedwire because Barclay’s is not a member of the Federal Reserve Bank system.

. The proposed Uniform New Payments Code (Permanent Editorial Board Draft No. 3) would extend and modify the UCC rules concerning checks to apply also to wire transfers. Section 411 (7), as proposed, would bar consequential damages for transmission failure in the absence of bad faith.